**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

No. __-____

---

JAMES CEZUS and other similarly situated employees,
Plaintiffs-Respondents,

v.

KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.,
Defendant-Petitioner.

---

# DEFENDANT'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

---

From an Order Entered by the United States District Court
for the District of New Jersey,
Civil Action No. 2:21-cv-00792-JXN-LDW
(Hon. Julien Xavier Neals, U.S.D.J.)

---

**FBT GIBBONS LLP**
Jennifer A. Hradil
Kristin D. Sostowski
Bria S. Beaufort
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

*Counsel for Defendant-Petitioner*
*Konica Minolta Business Solutions U.S.A., Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1.1, Defendant-Petitioner Konica Minolta Business Solutions U.S.A., Inc. makes the following disclosure:

Konica Minolta Business Solutions U.S.A., Inc. is a privately held corporation, wholly owned by Konica Minolta Holdings U.S.A., Inc., which is not publicly traded and which is wholly owned by Konica Minolta, Inc.

Dated: July 7, 2026

*s/ Jennifer A. Hradil*
Jennifer A. Hradil
**FBT Gibbons LLP**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

*Counsel for Defendant-Petitioner Konica Minolta Business Solutions U.S.A., Inc.*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .................................................. ii
TABLE OF AUTHORITIES .................................................................... iv
INTRODUCTION .................................................................................. 1
STATEMENT OF THE CASE .................................................................. 2

A. Plaintiff and the Putative Class ............................................. 2

B. The Windsor Transition ........................................................ 3

C. The Plan's Required Individualized Eligibility Determinations ..................................................................... 4

D. KMBS's Relocation Offers ................................................... 6

E. Denial of Plaintiff's Claim for Severance Benefits ............... 7

F. The Class Certification Ruling ............................................. 8

QUESTIONS PRESENTED ...................................................................... 9
RELIEF SOUGHT .................................................................................. 9
REASONS FOR GRANTING INTERLOCUTORY REVIEW ........................ 10

I. Interlocutory Review is Warranted Because the District Court Improperly Granted Class Certification Under Rule 23(b)(1) ....... 12

A. Rule 23(b)(1) Does Not Permit Mandatory Class Certification for Individualized Monetary Claims .............. 12

B. Certification Under Rule 23(b)(1) Is Improper Because Each Putative Class Member's Claim for Severance Requires an Individualized Assessment .................................................. 15

1. Rule 23(b)(1)(A) ....................................................... 18

2. Rule 23(b)(1)(B) ....................................................... 19

II. The District Court Erred in Determining That Commonality Was Satisfied Under Rule 23(a)(2) ....................................................... 20

CONCLUSION ...................................................................................... 22
CERTIFICATE OF COMPLIANCE ........................................................ 23
CERTIFICATE OF SERVICE ................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Ollie's Bargain Outlet, Inc.*,
37 F.4th 890 (3d Cir. 2022) ........ 9, 10

*In re Allstate Ins. Co.*,
400 F.3d 505 (7th Cir. 2005) ........ 13

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........ 18, 20

*Beck v. Maximus, Inc*.,
457 F.3d 291 (3d Cir. 2006) ........ 19

*Comcast Corp. v. Behrens*,
569 U.S. 27 (2013) ........ 21

*Ferreras v. Am. Airlines, Inc.*,
946 F.3d 178 (3d Cir. 2019) ........ 21

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) ........ 16

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011) ........ 12

*Hooven v. Exxon Mobil Corp.*,
465 F.3d 566 (3d Cir. 2006) ........ 16

*In re Hydrogen Peroxide Antitrust Litig*.,
552 F.3d 305 (3d Cir. 2008) ........ 11

*Johnston v. Garden State Med. Grp. P.A.*,
144 F.Supp.2d 324 (D.N.J. 2000) ........ 16

*Laudato v. EQT Corp.*,
23 F.4th 256 (3d Cir. 2022) ........ 10

*Luense v. Konica Minolta Business Solutions U.S.A., Inc.*,
No. 20-6827, 2024 U.S. Dist. LEXIS 96412
(D.N.J. May 30, 2024) ........ 14

*Noorily v. Thomas Betts Corp.*,
188 F.3d 153 (3d Cir. 1999) ........................................................................15

*Nutraceutical v. Lambert*,
586 U.S. 188 (2019)........................................................................................10

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ........................................................................19

*Trauernicht v. Genworth Fin. Inc.*,
169 F.4th 459 (4th Cir. 2026) ......................................................................14

*Wachtel v. Guardian Life Ins. Co. of Am.*,
453 F.3d 179 (3d Cir. 2006) ........................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................*passim*

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ......................................................................18

**Statutes**

29 U.S.C. §§ 1001 *et seq*. (ERISA) .........................................................*passim*

29 U.S.C. § 1132(a)(1)(B) (ERISA Section 502(a)(1)(B)) ........................*passim*

29 U.S.C. § 1132 (a)(2) (ERISA Section 502(a)(2)).........................................14

29 U.S.C. § 1132(a)(3) (ERISA Section 502(a)(3)) ...........................................3

29 U.S.C. §1140 (ERISA Section 510) ..............................................................3

**Other Authorities**

Fed. R. App. P. 5(a)(2)......................................................................................10

Fed. R. Civ. P. 23 ...............................................................................................2

Fed. R. Civ. P. 23(a).....................................................................................*passim*

Fed. R. Civ. P. 23(b) ...................................................................................*passim*

Fed. R. Civ. P. 23(c)(1).........................................................................................9

Fed. R. Civ. P. 23(f).....................................................................................*passim*

## INTRODUCTION

ERISA gives employers broad discretion to design severance plans to meet their business needs. When Konica Minolta Business Solutions U.S.A., Inc. ("KMBS" or the "Company") created its Amended and Restated Konica Minolta Severance Plan (the "Plan") in 2015, it adopted Eligibility Conditions that provided departing employees severance in limited circumstances and disqualified employees who rejected an offer of employment in another division, department, or office. This was KMBS's right under ERISA.

Three years later, KMBS consistently applied the Plan in connection with the Windsor Transition, a business consolidation of the Company's headquarters and back-office locations. Consistent with KMBS's business need to retain—not reduce—its workforce, the Company offered nearly every Windsor, Connecticut employee the opportunity to transfer and continue their employment in Ramsey, New Jersey or other KMBS locations. Employees who agreed to relocate retained their positions, compensation, and years of service, and received relocation benefits. Employees who declined to transfer, choosing not to continue their employment, were not entitled to severance under the Plan's terms.

Plaintiff seeks to represent a group of employees whose positions were relocated from Windsor to Ramsey, who were offered the opportunity to transfer, rejected the offers, and did not receive severance. Plaintiff seeks predominantly individualized monetary damages for each class member. By certifying a mandatory class under Rule 23(b)(1)—which is reserved for cases requiring

uniform treatment and not individualized monetary claims—the Court misapplied Rule 23.

The District Court's certification decision rests upon a novel application of Rule 23(b)(1) to ERISA benefits claims requiring individualized determinations, ignores precedent rejecting a (b)(1) certification for a class seeking individual monetary damages, and dramatically increases the litigation stakes. This is precisely the type of case for which interlocutory review under Rule 23(f) exists. KMBS respectfully petitions for permission to appeal and requests that this Court grant interlocutory review and reverse.

## STATEMENT OF THE CASE

### A. Plaintiff and the Putative Class

Plaintiff James Cezus ("Plaintiff") is a former employee who worked at KMBS's Windsor, Connecticut office. (Dkt. 108 at 5; Dkt. 25, ¶ 28.)[1] In December 2018, Plaintiff's employment was terminated after he declined an offer to transfer to the Company's headquarters in Ramsey, New Jersey as part of a business consolidation called the "Windsor Transition." (Dkt. 108 at 5; Dkt. 25, ¶¶ 46-48.) Plaintiff seeks to represent a class of former Windsor employees who, like him, were offered the opportunity to relocate and continue their employment, declined to do so, and were not paid severance based on the Plan's terms. (Dkt. 100-1 at 1–2; Dkt. 108 at 5–6.)

[1] All record citations refer to the docket in the underlying action, No. 2:21-cv-00792-JXN-LDW.

The Second Amended Complaint alleges the Windsor Transition was a "disguised" reduction in force ("RIF") designed to terminate employees without paying severance—allegations KMBS denies—and asserts claims for benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and for equitable relief under ERISA Sections 502(a)(3) and 510, 29 U.S.C. §§ 1132(a)(3), 1140. (Dkt. 25, ¶¶ 8-11, 117, 123; Dkt. 108 at 5–6.) The predominant relief sought is monetary, specifically, severance payments for each employee based on years of service and compensation, along with related benefits. (Dkt. 100-1 at 2; Dkt. 108 at 5–7.)

**B. The Windsor Transition**

The Windsor Transition was a long-anticipated business consolidation stemming from the 2003 merger of Konica and Minolta. (Dkt. 101-2, ¶¶ 7-10; Dkt. 101-4, ¶ 7.) After the merger, KMBS maintained Minolta's former Ramsey headquarters as its corporate headquarters, and the former Konica headquarters in Windsor as its primary back-office location. (Dkt. 101-2, ¶ 9; Dkt. 101-4, ¶ 7.) For years, KMBS discussed combining those offices into one location. (Dkt. 101-2, ¶¶ 7-10; Dkt. 101-4, ¶ 7.)

In 2017, KMBS moved forward with the consolidation of most of its headquarters and back-office operations onto its Ramsey campus. (Dkt. 101-4, ¶¶ 8–10.) To support the consolidation, in September 2017, KMBS applied to the State of New Jersey for tax credits under an economic development program providing tax credits to businesses that create or retain jobs in New Jersey ("Grow

NJ"). (Dkt. 101 at 4-5; Dkt. 101-2, ¶¶ 22–24.) The Grow NJ tax credits were contingent on KMBS significantly *increasing* its Ramsey workforce and completing major capital investments, giving KMBS a financial incentive to *retain* and fill positions, not eliminate them. (Dkt. 101-2, ¶¶ 24–27, 30.) In its Grow NJ application, KMBS committed to:

- Creating approximately 400 additional jobs in Ramsey (mostly roles to be relocated from Windsor) while retaining existing Ramsey positions;
- Investing in the Ramsey campus to create space for the additional employees; and
- Maintaining KMBS's New Jersey headquarters for at least 15 years.

(Dkt. 101 at 4-5; Dkt. 101-2, ¶¶ 24–27, 31, 34.) KMBS ultimately spent over $19 million to expand the Ramsey campus for approximately 400 additional employees, including every transferred Windsor position. (Dkt. 101-2, ¶¶ 31, 34-35; Dkt. 101-3, ¶¶ 9, 11, 21.) KMBS also paid more than $920,000 in relocation benefits to transferring Windsor employees. (Dkt. 101-2, ¶ 35.)

### C. The Plan's Required Individualized Eligibility Determinations

Years before the Windsor Transition, effective January 1, 2015, KMBS adopted the Plan, an ERISA welfare benefit plan. (Dkt. 101-4, ¶ 11; Dkt. 101 at 5-6.) Section 3.1 of the Plan establishes a series of "Eligibility Conditions" that each employee must satisfy to receive severance. These conditions require factual determinations for ***each employee***:

> Separation Pay shall be granted only to an Employee who (a) incurs a Termination of Employment due to an Eligible Event; (b) executes any separation and release agreement that the Company may require as described below; (c) continues employment with the Company through the

> Employee's Company-Determined Last Day of Employment; and (d) continues to perform satisfactorily the essential functions of his or her position through the Employee's Company-Determined Last Day of Employment.[2]

(Dkt. 101 at 5-6; Dkt. 101-4, Ex. A, § 2.15.)

The Plan states that a RIF, defined as "the elimination by the Company of one or more employment positions for an indefinite period of time," is an "Eligible Event." (Dkt. 101-4, Ex. A, §§ 2.15, 2.5.) Under Section 2.15, KMBS determines, in its "sole and absolute discretion," whether an employee has a Termination of Employment due to a RIF. (*Id.*) This determination is specific to each employee and their position, not a blanket classification that applies to all employees in a department or location.

Even if the Company determines that an individual employee's termination is due to a RIF (and not misconduct, inadequate performance, absenteeism, non-compliance with Company policies, resignation, retirement, failure to return after a leave of absence, or "any other cause"), that employee must still satisfy other Eligibility Conditions to receive severance, each requiring an individualized inquiry. (*Id.*, § 2.15.) Central to this appeal, Section 3.1.01 provides that even if a terminated employee satisfies all other Eligibility Conditions, "[s]eparation Pay will not be provided to a terminated employee ***who has refused an offer of***

[2] Even if an employee is determined eligible for severance at the time of their termination, those payments are discontinued if the employee is rehired by the Company "regardless of the nature, responsibilities, pay, or location of the employment" or if the employee breaches their separation agreement or other obligations. (Dkt. 101-4, Ex. A, § 3.4.)

***employment in another division, department, office, or unit of the Company***." (Dkt. 101 at 6; Dkt. 101-4, Ex. A, § 3.1.01) (emphasis added).

**D. KMBS's Relocation Offers**

On November 15, 2017, KMBS's then-CEO, Rick Taylor, announced the Windsor Transition at a town hall meeting. (Dkt. 101-4, ¶¶ 12–13; Dkt. 108 at 3.) Taylor told employees that most Windsor jobs (except for a few departments) would relocate to Ramsey within 6 to 18 months; affected employees would have the opportunity to remain with KMBS in Ramsey or other locations; employees who moved would receive relocation benefits; and employees who declined transfer would ***not*** be eligible for severance because their roles were being relocated, not eliminated. (Dkt. 101-4, ¶ 13; Dkt. 108 at 3.)

KMBS reiterated these points to the Windsor workforce through written FAQs, periodic updates, and individual 60-day notification letters. (Dkt. 101-4, ¶¶ 15–22, Ex. C; Dkt. 108 at 3.) Between mid-2018 and October 2018, each affected Windsor employee received an individual letter formally notifying them that their position would be transferred in 60 days and requesting confirmation of whether the employee would relocate. (Dkt. 101-4, ¶ 22.)

Consistent with KMBS's commitment to retaining its workforce, *all* Windsor employees who agreed to relocate were given positions in Ramsey and received relocation benefits. (Dkt. 101-4, ¶ 30.) By the end of 2018, 84 employees transferred from Windsor. (Dkt. 101 at 11.) Many Windsor employees who did not transfer voluntarily resigned to accept other job opportunities. (Dkt. 101-4, ¶

32.) Approximately 120 employees who declined to transfer, including Plaintiff, continued working in Windsor until their departments relocated and were then terminated. (Dkt. 108 at 4.) A small number of Windsor positions were eliminated because they were duplicative of positions already filled in Ramsey; those positions *were* determined to have been eliminated pursuant to a RIF, and if the affected employees met the Plan's other Eligibility Conditions, they received severance. (Dkt. 101-4, ¶ 35.)

### E. Denial of Plaintiff's Claim for Severance Benefits

Plaintiff's 60-day notification letter advised that his position would be transferred to Ramsey on December 14, 2018. (Dkt. 101-4, ¶ 22, Ex. H.) Plaintiff declined to transfer and was terminated when his position moved. (Dkt. 108 at 5.)

The Plan Administrator denied Plaintiff's claim for severance benefits under the Plan based on the Eligibility Conditions. (Dkt. 25, ¶¶ 72–73; Dkt. 108 at 5.) Specifically: (1) Plaintiff had not incurred "a Termination of Employment due to an Eligible Event" because KMBS had not eliminated his position for an indefinite period (or at all), but had *relocated* his role; and (2) Plaintiff's refusal of an offer to transfer to Ramsey separately rendered him ineligible under Section 3.1.01. (Dkt. 25, ¶ 73; Dkt. 101 at 14-15.) On appeal, the Plan Administrator reaffirmed the denial, explaining that Plaintiff had declined KMBS's offer of continued employment and that his position was not eliminated but relocated to Ramsey, where it continued to exist. (Dkt. 25, ¶¶ 85–87; Dkt. 101 at 15.) Plaintiff

then filed this putative class action in December 2020. (*See* Dkt. 25; Dkt. 108 at 5.)

### F. The Class Certification Ruling

Plaintiff moved to certify a class under Rule 23(b)(1), or alternatively under Rule 23(b)(2) or (b)(3). (Dkt. 100; Dkt. 108 at 6–7.) KMBS opposed certification, arguing (among other things) that the Plan's Eligibility Conditions require a determination of the circumstances of each employee's termination, and that mandatory class treatment under Rule 23(b)(1) is inappropriate for claims seeking individualized monetary damages.[3] (Dkt. 101 at 26-36, 39-40.)

On June 23, 2026, the District Court entered an order (the "Order") "granting" the Motion and "certifying" a class defined by the Court as:

> Every employee in Defendant's Windsor Office: (1) whose position was selected for transfer from the Windsor Office during the relocation effort; (2) who did not accept the transfer; (3) who was terminated after refusing the transfer; and (4) who was ineligible for severance benefits under the Plan as an employee "who has refused an offer of employment in another division, department, office, or unit of the Company."

(Dkt. 108 at 17–19; Dkt. 109 at 1–2.) The Order does not identify the claims, issues, or defenses subject to class determination, instead requiring the parties to make submissions on those matters within 30 days of the Order. Nonetheless, the

---

[3] In opposition to Plaintiff's motion, KMBS submitted detailed affidavits from three witnesses with direct knowledge of the financial aspects of the Windsor Transition, including KMBS's Grow NJ application; the expansion of KMBS's Ramsey campus to accommodate 400 additional employees; and employee communications and the relocation of employees who transferred. (Dkt. 101-2; Dkt. 101-3; Dkt. 101-4.)

Court's Opinion found that there was an ascertainable class and Rule 23(a) was satisfied and certified a class under Rule 23(b)(1)(A) and (B). (Dkt. 108 at 10–18.)

## QUESTIONS PRESENTED

1. Whether the District Court erred in certifying a mandatory class for claims seeking individual severance benefits under Rule 23(b)(1), which the Supreme Court has held is not an appropriate class vehicle for individualized monetary claims.

2. Whether the District Court erred in finding commonality under Rule 23(a)(2) where the Plan requires individualized determinations of whether Eligibility Conditions are met, including whether each employee's position was eliminated due to a RIF and whether each employee refused an offer of continued employment.

## RELIEF SOUGHT

The Order "granting" Plaintiff's motion for class certification postpones identification of the issues, claims, or defenses that are subject to class treatment. As such, the Order does not satisfy the requirements of Rule 23(c)(1). *See Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 903-04 (3d Cir. 2022) (noting requirement that class certification order include "readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis"); *see also Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179 (3d Cir. 2006) (remanding given lack of identification of claims, issues and defenses subject to

class treatment in certification order). However, because the Order purports to "certify" a class, KMBS petitions for leave to appeal the Order pursuant to Rule 23(f) within the 14-day deadline.[4] Fed. R. App. P. 5(a)(2); *Nutraceutical v. Lambert*, 586 U.S. 188, 193 (2019) (requiring rigorous enforcement of Rule 23(f)'s deadline).

**REASONS FOR GRANTING INTERLOCUTORY REVIEW**

"Contrary to the more limited approaches" applied in some circuits, the Third Circuit "exercises [its] very broad discretion using a more liberal standard" in determining whether to grant interlocutory review under Rule 23(f). *Laudato v. EQT Corp.*, 23 F.4th 256, 260 (3d Cir. 2022). Circumstances warranting interlocutory review include where: (1) the certification decision turns on a novel or unsettled question of law; (2) the district court's ruling is questionable; or (3) the nature of the case is such that certification substantially affects the stakes. *Id.* at 260–61. All of these circumstances are present here.

First, the Order flies in the face of Supreme Court authority foreclosing a Rule 23(b)(1) class where the claims are for individual monetary relief. As a result, this case presents a novel departure from existing precedent, and no Third Circuit case addresses whether a mandatory Rule 23(b)(1) class is appropriate for ERISA benefit claims brought under § 502(a)(1)(B)—claims for individual monetary benefits in the form of severance—as opposed to fiduciary claims

[4] *Allen*, 37 F.4th at 903-04. If the Court deems this Petition premature, KMBS respectfully requests that any denial be without prejudice.

brought on behalf of a plan. *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 322 (3d Cir. 2008) ("One important reason for granting interlocutory appeals under Fed. R. Civ. P. 23(f) is to address 'novel or unsettled questions of law' like those presented here.").

Second, the District Court's grant of class certification is erroneous because none of the determinations regarding each class member's eligibility under the Plan can be answered on a class-wide basis. Indeed, the class certified by the District Court consists entirely of employees who "refused an offer of employment in another division, department, office, or unit of the Company," and is thus defined by the very Plan exclusion that bars its members from receiving severance. (Dkt. 109 at 1–2.)

Finally, the Order substantially affects the stakes of the litigation. The certified class subjects over 100 former employees to a mandatory Rule 23(b)(1) class and thus transforms the litigation from an individual severance benefits claim into a multi-million-dollar class action,[5] intensifying the pressure on KMBS to settle while providing no exit for class members who might prefer to opt out and pursue their own claims.

Given the novel theory adopted by the District Court, immediate review of the Order is warranted before those significant consequences are visited upon the parties.

---

[5] Plaintiff claims the Windsor Transition was a "disguised" RIF to save KMBS "approximately $10 million" in projected severance. (Dkt. 100-1 at 5).

## I. Interlocutory Review is Warranted Because the District Court Improperly Granted Class Certification Under Rule 23(b)(1)

A plaintiff seeking class certification must satisfy each element of Rule 23(a) and at least one subsection of Rule 23(b). The District Court determined class certification was appropriate under Rule 23(b)(1)(A) because "the Plan Administrator has a legal obligation to interpret the Plan consistently for all similarly situated participants." (Dkt. 108 at 18.) The Court also concluded that (b)(1)(B) certification was appropriate because "resolving a case for one individual class member would, as a practical matter, resolve the case for all other class members." (Dkt. 108 at 18–19.) Both conclusions are fundamentally incorrect.

### A. Rule 23(b)(1) Does Not Permit Mandatory Class Certification for Individualized Monetary Claims

It is well-settled that monetary claims are ***not*** appropriate for Rule 23(b)(1) certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011); *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011) (noting limited protections for absent class members under Rule 23(b)(1)). The District Court's erroneous certification of a Rule 23(b)(1) class in a case seeking individual severance payments for each class member necessitates interlocutory review and reversal.

Plaintiff seeks to recover monetary benefits under the Plan pursuant to ERISA § 502(a)(1)(B), which permits a civil action "by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). (Dkt. 25, ¶¶ 104-117.) Here, Plaintiff seeks individual severance payments for himself and members of the putative class based on the termination of their employment from KMBS.

In concluding that such monetary claims may not be certified under Rule 23(b)(1), the Supreme Court in *Dukes* noted that a mandatory (b)(1) class does not provide class members the opportunity to opt out, and the rule "does not even oblige the District Court to afford them notice of the action." *Dukes*, 564 U.S. at 362. Further, in a class action "for money damages," the "absence of notice and opt-out violates due process." *Id.* at 363. The Court also emphasized "the need for plaintiffs with individual monetary claims to decide *for themselves* whether to tie their fates to the class representatives or go it alone." *Id.* at 364.

Here, as in *Dukes*, each putative class member's severance benefits claim is an individualized monetary claim. Thus, each former KMBS employee should have the opportunity to determine whether to pursue a claim in their own right, as opposed to being bound to a mandatory class. *See In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) ("[W]hen damages are sought, it is quite likely that some individual class members will want to sue on their own (provided that the potential damages per class member are substantial) rather than participate in a class-wide award.").

The Fourth Circuit recently applied these principles to reverse and vacate an order certifying a Rule 23(b)(1) class with respect to ERISA benefit claims, holding that such claims require individualized monetary determinations for

which mandatory class treatment under Rule 23(b)(1) is inappropriate. *See Trauernicht v. Genworth Fin. Inc.*, 169 F.4th 459, 470, 471 (4th Cir. 2026). Instead of being guided by this authority precluding a Rule 23(b)(1) class for individual monetary claims, the District Court improperly relied on *Luense v. Konica Minolta Business Solutions U.S.A., Inc.*, No. 20-6827, 2024 U.S. Dist. LEXIS 96412 (D.N.J. May 30, 2024), a fiduciary duty case that is in no way analogous to the facts here. *Luense* involved breach of fiduciary duty claims under ERISA § 502(a)(2) on behalf of a 401(k) plan and its participants based upon the alleged imprudent selection of investment options for participants. The claims in *Luense* fall squarely within the categories of claims for which Rule 23(b)(1) is intended—a claim on behalf of the plan for alleged breach of fiduciary duty to all class members.

But not all ERISA-based claims are the same. Plaintiff's claims here are brought under § 502(a)(1)(B) to recover *individual* severance benefits allegedly due to him and other class members under the Plan. Section 502(a)(1)(B) claims are by their nature individualized; they depend on each participant's entitlement to benefits under the specific terms of the plan. This distinction is dispositive: Rule 23(b)(1) may be appropriate for plan-wide fiduciary claims under ERISA § 502(a)(2), but it is not appropriate for individual benefit claims under § 502(a)(1)(B) for monetary damages  requiring employee-by-employee eligibility determinations.

The District Court's Order overlooks these grounded principles strictly prohibiting class certification under Rule 23(b)(1) for the monetary claims at issue. As such, this Court's intervention and interlocutory review is warranted, and the Order should be reversed.

### B. Certification Under Rule 23(b)(1) Is Improper Because Each Putative Class Member's Claim for Severance Requires an Individualized Assessment

There is no basis to grant class certification under any provision of Rule 23(b)(1).[6] Rule 23(b)(1) classes are based upon "the most traditional justification [ ] for class treatment—that individual adjudications would be impossible or unworkable." *Dukes*, 564 U.S. at 361–62 (footnote omitted). The opposite is true here: the individualized assessments necessary to resolve Plaintiff's and putative class members' eligibility claims foreclose certification under Rule 23(b)(1).

Courts have long recognized that employers may design severance plans to further legitimate business interests, including the retention of employees the employer wishes to keep. *See Noorily v. Thomas Betts Corp.*, 188 F.3d 153, 157–58 (3d Cir. 1999). Accordingly, an employer's implementation of a severance plan that requires individualized eligibility assessment is well-supported. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006) (benefits "must be determined on a case-by-case basis"). Here, the question of whether any class

---

[6] Plaintiff moved under all three Rule 23(b) subsections, but the District Court explicitly ruled only upon the request for certification under Rule 23(b)(1). (Dkt. 108 at 17 n.8.) KMBS reserves all rights as to the impropriety of certification under (b)(2) or (b)(3).

member is entitled to severance under the Plan requires an employee-by-employee assessment.

While the termination of any employee pursuant to a RIF is an Eligible Event, the Plan defines a RIF as "the elimination by the Company of one or more employment positions for an indefinite period of time which the Company classifies as a Reduction in Force." (Dkt. 101-4, Ex. A, § 2.15.) Because this determination is specific to each employee's position, the District Court improperly concluded that class certification was appropriate because the entire Windsor Transition either was or was not "a disguised RIF."[7]

Additionally, whether an employee's position was eliminated is only the start of the analysis of an employee's eligibility. The Plan expressly excludes from severance eligibility any employee "who has refused an offer of employment in another division, department, office, or unit of the Company." (*Id.*, § 3.1.01.) Such provisions are routinely honored. *See, e.g., Johnston v. Garden State Med. Grp. P.A.*, 144 F.Supp.2d 324, 328 (D.N.J. 2000) (affirming denial of severance benefits where employees' jobs were not "abolished" within the meaning of the plan). Notwithstanding the fact that this unambiguous exclusion applies to every member of the certified class defined by the District

[7] Even if the Windsor Transition were "a disguised RIF"—which KMBS disputes—each employee's rejection of a transfer offer was a separate and independent grounds to deny severance, and the Plan Administrator's determination with respect to each employee based on that Eligibility Condition is entitled to deference. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).

Court, the relevant Plan provisions require individualized determinations that cannot be resolved on a class-wide basis. Indeed, in addition to assessing whether an employee refused a transfer, the Eligibility Conditions require numerous other factual determinations for *each* employee before awarding severance:

- Did KMBS terminate the employee or did the employee voluntarily resign? (Dkt. 101-4, ¶ 32.)
- If the employee was terminated, did KMBS classify the termination as due to a RIF? (Dkt. 101-4, Ex. A, § 2.15)
- Was the employee's termination for "any other cause," such as misconduct, absenteeism, retirement, death, or failure to return from leave? (Dkt. 101-4, Ex. A, § 2.15.)
- Was the employee employed through the Company-Determined Last Day of Employment? (Dkt. 101-4, ¶¶ 23, 32–34.)
- Did the employee continue to perform their position satisfactorily through that date? (Dkt. 101-4, Ex. A, § 3.1(d).)
- Did the employee timely execute a separation and release agreement and not revoke it? (Dkt. 101-4, Ex. A, § 3.1(b).)
- Did the employee timely return all Company property? (Dkt. 101-4, Ex. A, § 3.1.02.)

Each of these factors must be considered when determining an employee's eligibility under the Plan.

#### 1. Rule 23(b)(1)(A)

Class certification under Rule 23(b)(1)(A) is appropriate where "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." *See* Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike…, or where the party must treat all alike as a matter of practical necessity." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).

The "incompatible standards of conduct" under 23(b)(1)(A) refers not to situations in which different plaintiffs might obtain different results based on different facts—that is the norm in individual litigation—but to situations where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001). Because each class member's claim depends upon facts specific to that former employee and their position, entitlement to relief may differ. However, the District Court did not explain how such differing results would subject KMBS to "incompatible requirements."

The District Court's determination that "the Plan Administrator has a legal obligation to interpret the Plan consistently for all similarly situated participants" does not support class treatment under Rule 23(b)(1)(A). The Court's finding that class members are "similarly situated" because Plaintiff's claims are "based on

Defendant's conduct" — *i.e.*, that Defendant "disguised a RIF" — is both incorrect and does not suffice for (b)(1)(A) certification. (Dkt. 108 at 18 n.9.) Even if the Court determined that the entire Windsor Transition constituted a "disguised" RIF (which it cannot, given both the necessary position-specific analysis and the Company's discretion under Section 2.15), answering that question would not resolve whether any particular employee was entitled to severance. None of the employee-specific inquiries necessary to determine eligibility can be resolved on a class-wide basis.

**2. Rule 23(b)(1)(B)**

Rule 23(b)(1)(B) only permits certification where a judgment in an individual litigant's action might as a practical matter preclude other would-be-class-members from bringing a claim. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009). In this way, (b)(1)(B) "addresses possible prejudice to members of the proposed class, and applies if individual actions 'would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). The classic example of a Rule 23(b)(1)(B) class is a limited fund case, because the available fund would be insufficient to satisfy all individual claims. *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiff's claim bears no resemblance to such a case, and the District Court did not explain how any

putative class member might be precluded (practically or technically) based upon a ruling in Plaintiff's individual litigation against KMBS.

KMBS did not make one decision that governed the treatment of all approximately 400 Windsor positions. Rather, based on multiple business considerations, the Company decided that most Windsor positions would transfer to Ramsey, but some would remain in the Windsor area, some would transfer to KMBS locations in Arizona and Florida, and a small number of positions duplicative of jobs in Ramsey would be eliminated. (Dkt. 101-4, ¶¶ 9-10.) Because the circumstances surrounding the employment outcomes for each impacted employee vary, a decision in one case regarding the circumstances of a particular employee's refusal to transfer and subsequent termination has no bearing upon the claim of any other potential class member under the Plan.

Therefore, the District Court erred in concluding that class certification was appropriate under Rule 23(b)(1)(A) and (b)(1)(B), and its ruling should be reversed.

## II. The District Court Erred in Determining That Commonality Was Satisfied Under Rule 23(a)(2)

The District Court's conclusion that Plaintiff satisfied the commonality requirement should be reversed because the Court failed to conduct the rigorous analysis necessary to determine whether Rule 23(a)'s elements are satisfied. The Court improperly concluded:

> [a] classwide proceeding can generate common answers to resolve this litigation, including (1) whether the relocation constituted a RIF

> under the Plan; (2) whether Defendant conducted a RIF under the guise of a relocation to avoid paying benefits under the Plan; and (3) whether class members "refused an offer of employment in another division, department, office, or unit of the Company."

(Dkt. 108 at 15.) Plaintiff presented no evidence demonstrating that these (or the Plan's other eligibility-related) questions can be resolved through "evidence common to the class rather than individual to its members." *See Comcast Corp. v. Behrens*, 569 U.S. 27, 30 (2013). In reaching its conclusions, the Court disregarded the well-settled principle that what matters "is not the raising of common questions, but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Dukes*, 564 U.S. at 350).

None of the questions identified by the District Court are susceptible to a single, class-wide answer. The threshold question, whether the Windsor Transition constituted a RIF, cannot be answered uniformly because whether a position was eliminated is specific to each role. And even if the Court were to conclude that the entire Windsor Transition was a "disguised" RIF, answering that question would not resolve whether any individual employee is entitled to severance. The record shows that some positions were filled by transferring employees; some positions were filled by new hires in Ramsey; and a small number of positions were eliminated, with severance paid to those impacted employees. (Dkt. 101-2, ¶¶ 33; Dkt. 101-4, ¶¶ 26-30, 35.) Because eligibility

under the Plan cannot be determined without examining each position individually, a class-wide proceeding cannot "generate common answers."

## CONCLUSION

For these reasons, the Court should grant review under Rule 23(f) and reverse the Order certifying a class.

*s/ Jennifer A. Hradil*
Jennifer A. Hradil
**FBT Gibbons LLP**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

*Counsel for Defendant-Petitioner Konica Minolta Business Solutions U.S.A., Inc.*

Dated: July 7, 2026

**CERTIFICATE OF COMPLIANCE**

1. Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this Petition, including the undersigned, is a member in good standing of the bar of this Court.

2. This Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1). This Petition contains 5,131 words, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f). The applicable word limit for a Rule 23(f) petition is 5,200 words.

3. This Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

4. This Petition complies with Third Circuit Local Appellate Rule 31.1(c) because the text of the Petition electronically filed with the Court is identical to the text of the paper copies.

5. I certify that pursuant to Third Circuit L.A.R. 31.1(c), the electronic PDF Petition has been prepared on a computer that is automatically protected with a virus detection program, namely a continuously updated version of CrowdStrike, version 7.37.20907.0, and no virus was detected.

*s/ Jennifer A. Hradil*
Jennifer A. Hradil
**FBT Gibbons LLP**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

*Counsel for Defendant-Petitioner Konica Minolta Business Solutions U.S.A., Inc.*

Dated: July 7, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2026, I electronically filed the foregoing Petition for Permission to Appeal with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered for electronic filing.

*s/ Jennifer A. Hradil*
Jennifer A. Hradil