**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

No. __-____

---

JAMES CEZUS and other similarly situated employees,
Plaintiffs-Respondents,

v.

KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.,
Defendant-Petitioner.

---

# DEFENDANT'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

---

From an Order Entered by the United States District Court
for the District of New Jersey,
Civil Action No. 2:21-cv-00792-JXN-LDW
(Hon. Julien Xavier Neals, U.S.D.J.)

---

**FBT GIBBONS LLP**
Jennifer A. Hradil
Kristin D. Sostowski
Bria S. Beaufort
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

*Counsel for Defendant-Petitioner*
*Konica Minolta Business Solutions U.S.A., Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1.1, Defendant-Petitioner Konica Minolta Business Solutions U.S.A., Inc. makes the following disclosure:

Konica Minolta Business Solutions U.S.A., Inc. is a privately held corporation, wholly owned by Konica Minolta Holdings U.S.A., Inc., which is not publicly traded and which is wholly owned by Konica Minolta, Inc.

Dated: July 7, 2026

*s/ Jennifer A. Hradil*
Jennifer A. Hradil
**FBT Gibbons LLP**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

*Counsel for Defendant-Petitioner Konica Minolta Business Solutions U.S.A., Inc.*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .................................................ii
TABLE OF AUTHORITIES .....................................................................iv
INTRODUCTION ....................................................................................1
STATEMENT OF THE CASE..................................................................2
A. Plaintiff and the Putative Class ............................................2
B. The Windsor Transition .......................................................3
C. The Plan's Required Individualized Eligibility Determinations ......................................................................4
D. KMBS's Relocation Offers...................................................6
E. Denial of Plaintiff's Claim for Severance Benefits ...............7
F. The Class Certification Ruling .............................................8
QUESTIONS PRESENTED......................................................................9
RELIEF SOUGHT.....................................................................................9
REASONS FOR GRANTING INTERLOCUTORY REVIEW .......................10
I. Interlocutory Review is Warranted Because the District Court Improperly Granted Class Certification Under Rule 23(b)(1).......12
A. Rule 23(b)(1) Does Not Permit Mandatory Class Certification for Individualized Monetary Claims .............12
B. Certification Under Rule 23(b)(1) Is Improper Because Each Putative Class Member's Claim for Severance Requires an Individualized Assessment..................................................15
1. Rule 23(b)(1)(A)......................................................18
2. Rule 23(b)(1)(B) ......................................................19
II. The District Court Erred in Determining That Commonality Was Satisfied Under Rule 23(a)(2) ......................................................20
CONCLUSION........................................................................................22
CERTIFICATE OF COMPLIANCE..........................................................23
CERTIFICATE OF SERVICE .................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Ollie's Bargain Outlet, Inc.*,
37 F.4th 890 (3d Cir. 2022) ....................................................9, 10

*In re Allstate Ins. Co.*,
400 F.3d 505 (7th Cir. 2005) ....................................................13

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)....................................................18, 20

*Beck v. Maximus, Inc*.,
457 F.3d 291 (3d Cir. 2006) ....................................................19

*Comcast Corp. v. Behrens*,
569 U.S. 27 (2013)....................................................21

*Ferreras v. Am. Airlines, Inc.*,
946 F.3d 178 (3d Cir. 2019) ....................................................21

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)....................................................16

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011) ....................................................12

*Hooven v. Exxon Mobil Corp.*,
465 F.3d 566 (3d Cir. 2006) ....................................................16

*In re Hydrogen Peroxide Antitrust Litig*.,
552 F.3d 305 (3d Cir. 2008) ....................................................11

*Johnston v. Garden State Med. Grp. P.A.*,
144 F.Supp.2d 324 (D.N.J. 2000)....................................................16

*Laudato v. EQT Corp.*,
23 F.4th 256 (3d Cir. 2022) ....................................................10

*Luense v. Konica Minolta Business Solutions U.S.A., Inc.*,
No. 20-6827, 2024 U.S. Dist. LEXIS 96412
(D.N.J. May 30, 2024) ....................................................14

*Noorily v. Thomas Betts Corp.*,
188 F.3d 153 (3d Cir. 1999) .......... 15

*Nutraceutical v. Lambert*,
586 U.S. 188 (2019) .......... 10

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .......... 19

*Trauernicht v. Genworth Fin. Inc.*,
169 F.4th 459 (4th Cir. 2026) .......... 14

*Wachtel v. Guardian Life Ins. Co. of Am.*,
453 F.3d 179 (3d Cir. 2006) .......... 10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... *passim*

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) .......... 18

**Statutes**

29 U.S.C. §§ 1001 *et seq*. (ERISA) .......... *passim*

29 U.S.C. § 1132(a)(1)(B) (ERISA Section 502(a)(1)(B)) .......... *passim*

29 U.S.C. § 1132 (a)(2) (ERISA Section 502(a)(2)) .......... 14

29 U.S.C. § 1132(a)(3) (ERISA Section 502(a)(3)) .......... 3

29 U.S.C. §1140 (ERISA Section 510) .......... 3

**Other Authorities**

Fed. R. App. P. 5(a)(2) .......... 10

Fed. R. Civ. P. 23 .......... 2

Fed. R. Civ. P. 23(a) .......... *passim*

Fed. R. Civ. P. 23(b) .......... *passim*

Fed. R. Civ. P. 23(c)(1) .......... 9

Fed. R. Civ. P. 23(f) .......... *passim*

**INTRODUCTION**

ERISA gives employers broad discretion to design severance plans to meet their business needs. When Konica Minolta Business Solutions U.S.A., Inc. ("KMBS" or the "Company") created its Amended and Restated Konica Minolta Severance Plan (the "Plan") in 2015, it adopted Eligibility Conditions that provided departing employees severance in limited circumstances and disqualified employees who rejected an offer of employment in another division, department, or office. This was KMBS's right under ERISA.

Three years later, KMBS consistently applied the Plan in connection with the Windsor Transition, a business consolidation of the Company's headquarters and back-office locations. Consistent with KMBS's business need to retain—not reduce—its workforce, the Company offered nearly every Windsor, Connecticut employee the opportunity to transfer and continue their employment in Ramsey, New Jersey or other KMBS locations. Employees who agreed to relocate retained their positions, compensation, and years of service, and received relocation benefits. Employees who declined to transfer, choosing not to continue their employment, were not entitled to severance under the Plan's terms.

Plaintiff seeks to represent a group of employees whose positions were relocated from Windsor to Ramsey, who were offered the opportunity to transfer, rejected the offers, and did not receive severance. Plaintiff seeks predominantly individualized monetary damages for each class member. By certifying a mandatory class under Rule 23(b)(1)—which is reserved for cases requiring

uniform treatment and not individualized monetary claims—the Court misapplied Rule 23.

The District Court's certification decision rests upon a novel application of Rule 23(b)(1) to ERISA benefits claims requiring individualized determinations, ignores precedent rejecting a (b)(1) certification for a class seeking individual monetary damages, and dramatically increases the litigation stakes. This is precisely the type of case for which interlocutory review under Rule 23(f) exists. KMBS respectfully petitions for permission to appeal and requests that this Court grant interlocutory review and reverse.

## STATEMENT OF THE CASE

### A. Plaintiff and the Putative Class

Plaintiff James Cezus ("Plaintiff") is a former employee who worked at KMBS's Windsor, Connecticut office. (Dkt. 108 at 5; Dkt. 25, ¶ 28.)[1] In December 2018, Plaintiff's employment was terminated after he declined an offer to transfer to the Company's headquarters in Ramsey, New Jersey as part of a business consolidation called the "Windsor Transition." (Dkt. 108 at 5; Dkt. 25, ¶¶ 46-48.) Plaintiff seeks to represent a class of former Windsor employees who, like him, were offered the opportunity to relocate and continue their employment, declined to do so, and were not paid severance based on the Plan's terms. (Dkt. 100-1 at 1–2; Dkt. 108 at 5–6.)

[1] All record citations refer to the docket in the underlying action, No. 2:21-cv-00792-JXN-LDW.

The Second Amended Complaint alleges the Windsor Transition was a "disguised" reduction in force ("RIF") designed to terminate employees without paying severance—allegations KMBS denies—and asserts claims for benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and for equitable relief under ERISA Sections 502(a)(3) and 510, 29 U.S.C. §§ 1132(a)(3), 1140. (Dkt. 25, ¶¶ 8-11, 117, 123; Dkt. 108 at 5–6.) The predominant relief sought is monetary, specifically, severance payments for each employee based on years of service and compensation, along with related benefits. (Dkt. 100-1 at 2; Dkt. 108 at 5–7.)

**B. The Windsor Transition**

The Windsor Transition was a long-anticipated business consolidation stemming from the 2003 merger of Konica and Minolta. (Dkt. 101-2, ¶¶ 7-10; Dkt. 101-4, ¶ 7.) After the merger, KMBS maintained Minolta's former Ramsey headquarters as its corporate headquarters, and the former Konica headquarters in Windsor as its primary back-office location. (Dkt. 101-2, ¶ 9; Dkt. 101-4, ¶ 7.) For years, KMBS discussed combining those offices into one location. (Dkt. 101-2, ¶¶ 7-10; Dkt. 101-4, ¶ 7.)

In 2017, KMBS moved forward with the consolidation of most of its headquarters and back-office operations onto its Ramsey campus. (Dkt. 101-4, ¶¶ 8–10.) To support the consolidation, in September 2017, KMBS applied to the State of New Jersey for tax credits under an economic development program providing tax credits to businesses that create or retain jobs in New Jersey ("Grow

NJ”). (Dkt. 101 at 4-5; Dkt. 101-2, ¶¶ 22–24.) The Grow NJ tax credits were contingent on KMBS significantly *increasing* its Ramsey workforce and completing major capital investments, giving KMBS a financial incentive to *retain* and fill positions, not eliminate them. (Dkt. 101-2, ¶¶ 24–27, 30.) In its Grow NJ application, KMBS committed to:

- Creating approximately 400 additional jobs in Ramsey (mostly roles to be relocated from Windsor) while retaining existing Ramsey positions;
- Investing in the Ramsey campus to create space for the additional employees; and
- Maintaining KMBS’s New Jersey headquarters for at least 15 years.

(Dkt. 101 at 4-5; Dkt. 101-2, ¶¶ 24–27, 31, 34.) KMBS ultimately spent over $19 million to expand the Ramsey campus for approximately 400 additional employees, including every transferred Windsor position. (Dkt. 101-2, ¶¶ 31, 34-35; Dkt. 101-3, ¶¶ 9, 11, 21.) KMBS also paid more than $920,000 in relocation benefits to transferring Windsor employees. (Dkt. 101-2, ¶ 35.)

### C. The Plan’s Required Individualized Eligibility Determinations

Years before the Windsor Transition, effective January 1, 2015, KMBS adopted the Plan, an ERISA welfare benefit plan. (Dkt. 101-4, ¶ 11; Dkt. 101 at 5-6.) Section 3.1 of the Plan establishes a series of “Eligibility Conditions” that each employee must satisfy to receive severance. These conditions require factual determinations for ***each employee***:

> Separation Pay shall be granted only to an Employee who (a) incurs a Termination of Employment due to an Eligible Event; (b) executes any separation and release agreement that the Company may require as described below; (c) continues employment with the Company through the

> Employee's Company-Determined Last Day of Employment; and (d) continues to perform satisfactorily the essential functions of his or her position through the Employee's Company-Determined Last Day of Employment.[2]

(Dkt. 101 at 5-6; Dkt. 101-4, Ex. A, § 2.15.)

The Plan states that a RIF, defined as "the elimination by the Company of one or more employment positions for an indefinite period of time," is an "Eligible Event." (Dkt. 101-4, Ex. A, §§ 2.15, 2.5.) Under Section 2.15, KMBS determines, in its "sole and absolute discretion," whether an employee has a Termination of Employment due to a RIF. (*Id.*) This determination is specific to each employee and their position, not a blanket classification that applies to all employees in a department or location.

Even if the Company determines that an individual employee's termination is due to a RIF (and not misconduct, inadequate performance, absenteeism, non-compliance with Company policies, resignation, retirement, failure to return after a leave of absence, or "any other cause"), that employee must still satisfy other Eligibility Conditions to receive severance, each requiring an individualized inquiry. (*Id.*, § 2.15.) Central to this appeal, Section 3.1.01 provides that even if a terminated employee satisfies all other Eligibility Conditions, "[s]eparation Pay will not be provided to a terminated employee ***who has refused an offer of***

---

[2] Even if an employee is determined eligible for severance at the time of their termination, those payments are discontinued if the employee is rehired by the Company "regardless of the nature, responsibilities, pay, or location of the employment" or if the employee breaches their separation agreement or other obligations. (Dkt. 101-4, Ex. A, § 3.4.)

***employment in another division, department, office, or unit of the Company*.**" (Dkt. 101 at 6; Dkt. 101-4, Ex. A, § 3.1.01) (emphasis added).

**D. KMBS's Relocation Offers**

On November 15, 2017, KMBS's then-CEO, Rick Taylor, announced the Windsor Transition at a town hall meeting. (Dkt. 101-4, ¶¶ 12–13; Dkt. 108 at 3.) Taylor told employees that most Windsor jobs (except for a few departments) would relocate to Ramsey within 6 to 18 months; affected employees would have the opportunity to remain with KMBS in Ramsey or other locations; employees who moved would receive relocation benefits; and employees who declined transfer would ***not*** be eligible for severance because their roles were being relocated, not eliminated. (Dkt. 101-4, ¶ 13; Dkt. 108 at 3.)

KMBS reiterated these points to the Windsor workforce through written FAQs, periodic updates, and individual 60-day notification letters. (Dkt. 101-4, ¶¶ 15–22, Ex. C; Dkt. 108 at 3.) Between mid-2018 and October 2018, each affected Windsor employee received an individual letter formally notifying them that their position would be transferred in 60 days and requesting confirmation of whether the employee would relocate. (Dkt. 101-4, ¶ 22.)

Consistent with KMBS's commitment to retaining its workforce, *all* Windsor employees who agreed to relocate were given positions in Ramsey and received relocation benefits. (Dkt. 101-4, ¶ 30.) By the end of 2018, 84 employees transferred from Windsor. (Dkt. 101 at 11.) Many Windsor employees who did not transfer voluntarily resigned to accept other job opportunities. (Dkt. 101-4, ¶

32.) Approximately 120 employees who declined to transfer, including Plaintiff, continued working in Windsor until their departments relocated and were then terminated. (Dkt. 108 at 4.) A small number of Windsor positions were eliminated because they were duplicative of positions already filled in Ramsey; those positions *were* determined to have been eliminated pursuant to a RIF, and if the affected employees met the Plan's other Eligibility Conditions, they received severance. (Dkt. 101-4, ¶ 35.)

### E. Denial of Plaintiff's Claim for Severance Benefits

Plaintiff's 60-day notification letter advised that his position would be transferred to Ramsey on December 14, 2018. (Dkt. 101-4, ¶ 22, Ex. H.) Plaintiff declined to transfer and was terminated when his position moved. (Dkt. 108 at 5.)

The Plan Administrator denied Plaintiff's claim for severance benefits under the Plan based on the Eligibility Conditions. (Dkt. 25, ¶¶ 72–73; Dkt. 108 at 5.) Specifically: (1) Plaintiff had not incurred "a Termination of Employment due to an Eligible Event" because KMBS had not eliminated his position for an indefinite period (or at all), but had *relocated* his role; and (2) Plaintiff's refusal of an offer to transfer to Ramsey separately rendered him ineligible under Section 3.1.01. (Dkt. 25, ¶ 73; Dkt. 101 at 14-15.) On appeal, the Plan Administrator reaffirmed the denial, explaining that Plaintiff had declined KMBS's offer of continued employment and that his position was not eliminated but relocated to Ramsey, where it continued to exist. (Dkt. 25, ¶¶ 85–87; Dkt. 101 at 15.) Plaintiff

then filed this putative class action in December 2020. (*See* Dkt. 25; Dkt. 108 at 5.)

### F. The Class Certification Ruling

Plaintiff moved to certify a class under Rule 23(b)(1), or alternatively under Rule 23(b)(2) or (b)(3). (Dkt. 100; Dkt. 108 at 6–7.) KMBS opposed certification, arguing (among other things) that the Plan's Eligibility Conditions require a determination of the circumstances of each employee's termination, and that mandatory class treatment under Rule 23(b)(1) is inappropriate for claims seeking individualized monetary damages.[3] (Dkt. 101 at 26-36, 39-40.)

On June 23, 2026, the District Court entered an order (the "Order") "granting" the Motion and "certifying" a class defined by the Court as:

> Every employee in Defendant's Windsor Office: (1) whose position was selected for transfer from the Windsor Office during the relocation effort; (2) who did not accept the transfer; (3) who was terminated after refusing the transfer; and (4) who was ineligible for severance benefits under the Plan as an employee "who has refused an offer of employment in another division, department, office, or unit of the Company."

(Dkt. 108 at 17–19; Dkt. 109 at 1–2.) The Order does not identify the claims, issues, or defenses subject to class determination, instead requiring the parties to make submissions on those matters within 30 days of the Order. Nonetheless, the

---

[3] In opposition to Plaintiff's motion, KMBS submitted detailed affidavits from three witnesses with direct knowledge of the financial aspects of the Windsor Transition, including KMBS's Grow NJ application; the expansion of KMBS's Ramsey campus to accommodate 400 additional employees; and employee communications and the relocation of employees who transferred. (Dkt. 101-2; Dkt. 101-3; Dkt. 101-4.)

Court's Opinion found that there was an ascertainable class and Rule 23(a) was satisfied and certified a class under Rule 23(b)(1)(A) and (B). (Dkt. 108 at 10–18.)

**QUESTIONS PRESENTED**

1. Whether the District Court erred in certifying a mandatory class for claims seeking individual severance benefits under Rule 23(b)(1), which the Supreme Court has held is not an appropriate class vehicle for individualized monetary claims.

2. Whether the District Court erred in finding commonality under Rule 23(a)(2) where the Plan requires individualized determinations of whether Eligibility Conditions are met, including whether each employee's position was eliminated due to a RIF and whether each employee refused an offer of continued employment.

**RELIEF SOUGHT**

The Order "granting" Plaintiff's motion for class certification postpones identification of the issues, claims, or defenses that are subject to class treatment. As such, the Order does not satisfy the requirements of Rule 23(c)(1). *See Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 903-04 (3d Cir. 2022) (noting requirement that class certification order include "readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis"); *see also Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179 (3d Cir. 2006) (remanding given lack of identification of claims, issues and defenses subject to

class treatment in certification order). However, because the Order purports to "certify" a class, KMBS petitions for leave to appeal the Order pursuant to Rule 23(f) within the 14-day deadline.[4] Fed. R. App. P. 5(a)(2); *Nutraceutical v. Lambert*, 586 U.S. 188, 193 (2019) (requiring rigorous enforcement of Rule 23(f)'s deadline).

## REASONS FOR GRANTING INTERLOCUTORY REVIEW

"Contrary to the more limited approaches" applied in some circuits, the Third Circuit "exercises [its] very broad discretion using a more liberal standard" in determining whether to grant interlocutory review under Rule 23(f). *Laudato v. EQT Corp.*, 23 F.4th 256, 260 (3d Cir. 2022). Circumstances warranting interlocutory review include where: (1) the certification decision turns on a novel or unsettled question of law; (2) the district court's ruling is questionable; or (3) the nature of the case is such that certification substantially affects the stakes. *Id.* at 260–61. All of these circumstances are present here.

First, the Order flies in the face of Supreme Court authority foreclosing a Rule 23(b)(1) class where the claims are for individual monetary relief. As a result, this case presents a novel departure from existing precedent, and no Third Circuit case addresses whether a mandatory Rule 23(b)(1) class is appropriate for ERISA benefit claims brought under § 502(a)(1)(B)—claims for individual monetary benefits in the form of severance—as opposed to fiduciary claims

---

[4] *Allen*, 37 F.4th at 903-04. If the Court deems this Petition premature, KMBS respectfully requests that any denial be without prejudice.

brought on behalf of a plan. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 322 (3d Cir. 2008) ("One important reason for granting interlocutory appeals under Fed. R. Civ. P. 23(f) is to address 'novel or unsettled questions of law' like those presented here.").

Second, the District Court's grant of class certification is erroneous because none of the determinations regarding each class member's eligibility under the Plan can be answered on a class-wide basis. Indeed, the class certified by the District Court consists entirely of employees who "refused an offer of employment in another division, department, office, or unit of the Company," and is thus defined by the very Plan exclusion that bars its members from receiving severance. (Dkt. 109 at 1–2.)

Finally, the Order substantially affects the stakes of the litigation. The certified class subjects over 100 former employees to a mandatory Rule 23(b)(1) class and thus transforms the litigation from an individual severance benefits claim into a multi-million-dollar class action,[5] intensifying the pressure on KMBS to settle while providing no exit for class members who might prefer to opt out and pursue their own claims.

Given the novel theory adopted by the District Court, immediate review of the Order is warranted before those significant consequences are visited upon the parties.

[5] Plaintiff claims the Windsor Transition was a "disguised" RIF to save KMBS "approximately $10 million" in projected severance. (Dkt. 100-1 at 5).

## I. Interlocutory Review is Warranted Because the District Court Improperly Granted Class Certification Under Rule 23(b)(1)

A plaintiff seeking class certification must satisfy each element of Rule 23(a) and at least one subsection of Rule 23(b). The District Court determined class certification was appropriate under Rule 23(b)(1)(A) because "the Plan Administrator has a legal obligation to interpret the Plan consistently for all similarly situated participants." (Dkt. 108 at 18.) The Court also concluded that (b)(1)(B) certification was appropriate because "resolving a case for one individual class member would, as a practical matter, resolve the case for all other class members." (Dkt. 108 at 18–19.) Both conclusions are fundamentally incorrect.

### A. Rule 23(b)(1) Does Not Permit Mandatory Class Certification for Individualized Monetary Claims

It is well-settled that monetary claims are ***not*** appropriate for Rule 23(b)(1) certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011); *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011) (noting limited protections for absent class members under Rule 23(b)(1)). The District Court's erroneous certification of a Rule 23(b)(1) class in a case seeking individual severance payments for each class member necessitates interlocutory review and reversal.

Plaintiff seeks to recover monetary benefits under the Plan pursuant to ERISA § 502(a)(1)(B), which permits a civil action "by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). (Dkt. 25, ¶¶ 104-117.) Here, Plaintiff seeks individual severance payments for himself and members of the putative class based on the termination of their employment from KMBS.

In concluding that such monetary claims may not be certified under Rule 23(b)(1), the Supreme Court in *Dukes* noted that a mandatory (b)(1) class does not provide class members the opportunity to opt out, and the rule "does not even oblige the District Court to afford them notice of the action." *Dukes*, 564 U.S. at 362. Further, in a class action "for money damages," the "absence of notice and opt-out violates due process." *Id.* at 363. The Court also emphasized "the need for plaintiffs with individual monetary claims to decide *for themselves* whether to tie their fates to the class representatives or go it alone." *Id.* at 364.

Here, as in *Dukes*, each putative class member's severance benefits claim is an individualized monetary claim. Thus, each former KMBS employee should have the opportunity to determine whether to pursue a claim in their own right, as opposed to being bound to a mandatory class. *See In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) ("[W]hen damages are sought, it is quite likely that some individual class members will want to sue on their own (provided that the potential damages per class member are substantial) rather than participate in a class-wide award.").

The Fourth Circuit recently applied these principles to reverse and vacate an order certifying a Rule 23(b)(1) class with respect to ERISA benefit claims, holding that such claims require individualized monetary determinations for

which mandatory class treatment under Rule 23(b)(1) is inappropriate. *See Trauernicht v. Genworth Fin. Inc.*, 169 F.4th 459, 470, 471 (4th Cir. 2026). Instead of being guided by this authority precluding a Rule 23(b)(1) class for individual monetary claims, the District Court improperly relied on *Luense v. Konica Minolta Business Solutions U.S.A., Inc.*, No. 20-6827, 2024 U.S. Dist. LEXIS 96412 (D.N.J. May 30, 2024), a fiduciary duty case that is in no way analogous to the facts here. *Luense* involved breach of fiduciary duty claims under ERISA § 502(a)(2) on behalf of a 401(k) plan and its participants based upon the alleged imprudent selection of investment options for participants. The claims in *Luense* fall squarely within the categories of claims for which Rule 23(b)(1) is intended—a claim on behalf of the plan for alleged breach of fiduciary duty to all class members.

But not all ERISA-based claims are the same. Plaintiff's claims here are brought under § 502(a)(1)(B) to recover *individual* severance benefits allegedly due to him and other class members under the Plan. Section 502(a)(1)(B) claims are by their nature individualized; they depend on each participant's entitlement to benefits under the specific terms of the plan. This distinction is dispositive: Rule 23(b)(1) may be appropriate for plan-wide fiduciary claims under ERISA § 502(a)(2), but it is not appropriate for individual benefit claims under § 502(a)(1)(B) for monetary damages  requiring employee-by-employee eligibility determinations.

The District Court's Order overlooks these grounded principles strictly prohibiting class certification under Rule 23(b)(1) for the monetary claims at issue. As such, this Court's intervention and interlocutory review is warranted, and the Order should be reversed.

### B. Certification Under Rule 23(b)(1) Is Improper Because Each Putative Class Member's Claim for Severance Requires an Individualized Assessment

There is no basis to grant class certification under any provision of Rule 23(b)(1).[6] Rule 23(b)(1) classes are based upon "the most traditional justification [ ] for class treatment—that individual adjudications would be impossible or unworkable." *Dukes*, 564 U.S. at 361–62 (footnote omitted). The opposite is true here: the individualized assessments necessary to resolve Plaintiff's and putative class members' eligibility claims foreclose certification under Rule 23(b)(1).

Courts have long recognized that employers may design severance plans to further legitimate business interests, including the retention of employees the employer wishes to keep. *See Noorily v. Thomas Betts Corp.*, 188 F.3d 153, 157–58 (3d Cir. 1999). Accordingly, an employer's implementation of a severance plan that requires individualized eligibility assessment is well-supported. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006) (benefits "must be determined on a case-by-case basis"). Here, the question of whether any class

---

[6] Plaintiff moved under all three Rule 23(b) subsections, but the District Court explicitly ruled only upon the request for certification under Rule 23(b)(1). (Dkt. 108 at 17 n.8.) KMBS reserves all rights as to the impropriety of certification under (b)(2) or (b)(3).

member is entitled to severance under the Plan requires an employee-by-employee assessment.

While the termination of any employee pursuant to a RIF is an Eligible Event, the Plan defines a RIF as "the elimination by the Company of one or more employment positions for an indefinite period of time which the Company classifies as a Reduction in Force." (Dkt. 101-4, Ex. A, § 2.15.) Because this determination is specific to each employee's position, the District Court improperly concluded that class certification was appropriate because the entire Windsor Transition either was or was not "a disguised RIF."[7]

Additionally, whether an employee's position was eliminated is only the start of the analysis of an employee's eligibility. The Plan expressly excludes from severance eligibility any employee "who has refused an offer of employment in another division, department, office, or unit of the Company." (*Id.*, § 3.1.01.) Such provisions are routinely honored. *See, e.g., Johnston v. Garden State Med. Grp. P.A.*, 144 F.Supp.2d 324, 328 (D.N.J. 2000) (affirming denial of severance benefits where employees' jobs were not "abolished" within the meaning of the plan). Notwithstanding the fact that this unambiguous exclusion applies to every member of the certified class defined by the District

[7] Even if the Windsor Transition were "a disguised RIF"—which KMBS disputes—each employee's rejection of a transfer offer was a separate and independent grounds to deny severance, and the Plan Administrator's determination with respect to each employee based on that Eligibility Condition is entitled to deference. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).

Court, the relevant Plan provisions require individualized determinations that cannot be resolved on a class-wide basis. Indeed, in addition to assessing whether an employee refused a transfer, the Eligibility Conditions require numerous other factual determinations for *each* employee before awarding severance:

- Did KMBS terminate the employee or did the employee voluntarily resign? (Dkt. 101-4, ¶ 32.)
- If the employee was terminated, did KMBS classify the termination as due to a RIF? (Dkt. 101-4, Ex. A, § 2.15)
- Was the employee's termination for "any other cause," such as misconduct, absenteeism, retirement, death, or failure to return from leave? (Dkt. 101-4, Ex. A, § 2.15.)
- Was the employee employed through the Company-Determined Last Day of Employment? (Dkt. 101-4, ¶¶ 23, 32–34.)
- Did the employee continue to perform their position satisfactorily through that date? (Dkt. 101-4, Ex. A, § 3.1(d).)
- Did the employee timely execute a separation and release agreement and not revoke it? (Dkt. 101-4, Ex. A, § 3.1(b).)
- Did the employee timely return all Company property? (Dkt. 101-4, Ex. A, § 3.1.02.)

Each of these factors must be considered when determining an employee's eligibility under the Plan.

### 1. Rule 23(b)(1)(A)

Class certification under Rule 23(b)(1)(A) is appropriate where "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." *See* Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike…, or where the party must treat all alike as a matter of practical necessity." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).

The "incompatible standards of conduct" under 23(b)(1)(A) refers not to situations in which different plaintiffs might obtain different results based on different facts—that is the norm in individual litigation—but to situations where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001). Because each class member's claim depends upon facts specific to that former employee and their position, entitlement to relief may differ. However, the District Court did not explain how such differing results would subject KMBS to "incompatible requirements."

The District Court's determination that "the Plan Administrator has a legal obligation to interpret the Plan consistently for all similarly situated participants" does not support class treatment under Rule 23(b)(1)(A). The Court's finding that class members are "similarly situated" because Plaintiff's claims are "based on

Defendant's conduct" — *i.e.*, that Defendant "disguised a RIF" — is both incorrect and does not suffice for (b)(1)(A) certification. (Dkt. 108 at 18 n.9.) Even if the Court determined that the entire Windsor Transition constituted a "disguised" RIF (which it cannot, given both the necessary position-specific analysis and the Company's discretion under Section 2.15), answering that question would not resolve whether any particular employee was entitled to severance. None of the employee-specific inquiries necessary to determine eligibility can be resolved on a class-wide basis.

**2. Rule 23(b)(1)(B)**

Rule 23(b)(1)(B) only permits certification where a judgment in an individual litigant's action might as a practical matter preclude other would-be-class-members from bringing a claim. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009). In this way, (b)(1)(B) "addresses possible prejudice to members of the proposed class, and applies if individual actions 'would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). The classic example of a Rule 23(b)(1)(B) class is a limited fund case, because the available fund would be insufficient to satisfy all individual claims. *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiff's claim bears no resemblance to such a case, and the District Court did not explain how any

putative class member might be precluded (practically or technically) based upon a ruling in Plaintiff's individual litigation against KMBS.

KMBS did not make one decision that governed the treatment of all approximately 400 Windsor positions. Rather, based on multiple business considerations, the Company decided that most Windsor positions would transfer to Ramsey, but some would remain in the Windsor area, some would transfer to KMBS locations in Arizona and Florida, and a small number of positions duplicative of jobs in Ramsey would be eliminated. (Dkt. 101-4, ¶¶ 9-10.) Because the circumstances surrounding the employment outcomes for each impacted employee vary, a decision in one case regarding the circumstances of a particular employee's refusal to transfer and subsequent termination has no bearing upon the claim of any other potential class member under the Plan.

Therefore, the District Court erred in concluding that class certification was appropriate under Rule 23(b)(1)(A) and (b)(1)(B), and its ruling should be reversed.

## II. The District Court Erred in Determining That Commonality Was Satisfied Under Rule 23(a)(2)

The District Court's conclusion that Plaintiff satisfied the commonality requirement should be reversed because the Court failed to conduct the rigorous analysis necessary to determine whether Rule 23(a)'s elements are satisfied. The Court improperly concluded:

> [a] classwide proceeding can generate common answers to resolve this litigation, including (1) whether the relocation constituted a RIF

> under the Plan; (2) whether Defendant conducted a RIF under the guise of a relocation to avoid paying benefits under the Plan; and (3) whether class members "refused an offer of employment in another division, department, office, or unit of the Company."

(Dkt. 108 at 15.) Plaintiff presented no evidence demonstrating that these (or the Plan's other eligibility-related) questions can be resolved through "evidence common to the class rather than individual to its members." *See Comcast Corp. v. Behrens*, 569 U.S. 27, 30 (2013). In reaching its conclusions, the Court disregarded the well-settled principle that what matters "is not the raising of common questions, but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Dukes*, 564 U.S. at 350).

None of the questions identified by the District Court are susceptible to a single, class-wide answer. The threshold question, whether the Windsor Transition constituted a RIF, cannot be answered uniformly because whether a position was eliminated is specific to each role. And even if the Court were to conclude that the entire Windsor Transition was a "disguised" RIF, answering that question would not resolve whether any individual employee is entitled to severance. The record shows that some positions were filled by transferring employees; some positions were filled by new hires in Ramsey; and a small number of positions were eliminated, with severance paid to those impacted employees. (Dkt. 101-2, ¶¶ 33; Dkt. 101-4, ¶¶ 26-30, 35.) Because eligibility

under the Plan cannot be determined without examining each position individually, a class-wide proceeding cannot "generate common answers."

## CONCLUSION

For these reasons, the Court should grant review under Rule 23(f) and reverse the Order certifying a class.

*s/ Jennifer A. Hradil*
Jennifer A. Hradil
**FBT Gibbons LLP**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

*Counsel for Defendant-Petitioner Konica Minolta Business Solutions U.S.A., Inc.*

Dated: July 7, 2026

## CERTIFICATE OF COMPLIANCE

1. Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this Petition, including the undersigned, is a member in good standing of the bar of this Court.

2. This Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1). This Petition contains 5,131 words, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f). The applicable word limit for a Rule 23(f) petition is 5,200 words.

3. This Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

4. This Petition complies with Third Circuit Local Appellate Rule 31.1(c) because the text of the Petition electronically filed with the Court is identical to the text of the paper copies.

5. I certify that pursuant to Third Circuit L.A.R. 31.1(c), the electronic PDF Petition has been prepared on a computer that is automatically protected with a virus detection program, namely a continuously updated version of CrowdStrike, version 7.37.20907.0, and no virus was detected.

*s/ Jennifer A. Hradil*
Jennifer A. Hradil
**FBT Gibbons LLP**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

*Counsel for Defendant-Petitioner Konica Minolta Business Solutions U.S.A., Inc.*

Dated: July 7, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2026, I electronically filed the foregoing Petition for Permission to Appeal with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered for electronic filing.

*s/ Jennifer A. Hradil*
Jennifer A. Hradil

## **REVISED CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2026, I electronically filed the foregoing Petition for Permission to Appeal with the Clerk of the Court using the CM/ECF system.

Further, on July 7, 2026, the foregoing Petition for Permission to Appeal was sent to all counsel of record via electronic mail.

*s/ Jennifer A. Hradil*
Jennifer A. Hradil

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES CEZUS *and other similarly situated employees*,<br><br>Plaintiffs,<br><br>v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.,<br><br>Defendant. | Civil Action No. 21-792 (JXN)(LDW)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Plaintiff James Cezus's ("Plaintiff") motion for class certification under Federal Rule of Civil Procedure[1] 23. (ECF No. 100.) Defendant Konica Minolta Business Solutions, U.S.A., Inc. ("Defendant") opposed (ECF No. 101); and Plaintiff replied (ECF No. 102). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). The action was removed to this Court pursuant to 28 U.S.C. §§ 1446(a) and 1441(a). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion for class certification is **GRANTED**.

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

# I. BACKGROUND

## A. Statement of Facts

### *i. The Relocation*

Two Japanese technology companies merged in 2003 to form Defendant. (DeSantis Aff. ¶ 3, ECF No. 101-2.) One company, Konica, had an office in Windsor, Connecticut ("Windsor Office"). (*Id.*) The other, Minolta, had an office in Ramsey, New Jersey ("Ramsey Office"). (*Id.*) Though Defendant initially maintained both offices after the merger (*id.*), by 2016, Defendant sought to consolidate its operations in one place. (*Id.* ¶ 11.) After reviewing several possible locations for a new headquarters, Defendant chose to move most of its Windsor operations to the Ramsey Office. (*Id.* ¶ 14.)

In connection with its consolidation plan, Defendant applied for tax credits through the "Grow NJ program" in September 2017. (*See id.* ¶¶ 19–21; DeSantis Ex. A ("Grow NJ Appl."), ECF No. 107-4.) Grow NJ was an "economic development program intended to encourage the retention and creation of jobs in New Jersey." (DeSantis Aff. ¶ 19.) Under the program, a business that "created and/or retained jobs in New Jersey and made certain capital investments could be eligible for tax credits over a [ten]-year period, per job and per year." (*Id.*) To obtain Grow NJ tax credits, Defendant committed to (a) bring "approximately 400 additional jobs to New Jersey," with at least 300 of those jobs coming from the Windsor Office; (b) invest more than $19 million in expanding the Ramsey Office; and (c) maintain the Ramsey Office as Defendant's headquarters for at least fifteen years. (*Id.* ¶ 24; Grow NJ Appl.) As part of its application, Defendant supplied the New Jersey Economic Development Authority ("EDA") with a list of 852 employees working in the Windsor and Ramsey Offices, along with forty-eight new positions Defendant expected to fill. (DeSantis Aff. ¶ 25; DeSantis Ex. B ("EDA Emp. Spreadsheet"), ECF No. 107-5.)

Two months later, on November 14, 2017, the EDA approved Defendant's Grow NJ application. (DeSantis Aff. ¶ 27; DeSantis Ex. C ("EDA Approval Letter"), ECF No. 107-6.) The EDA offered Defendant over $29 million in tax credits. (EDA Approval Letter at 3.) In exchange, Defendant agreed to create 391 new jobs, most of which would be transferred from the Windsor Office. (*Id.* at 2; DeSantis Aff. ¶ 27.)

The next day, Defendant's CEO[2] announced the company's relocation plans in an employee town hall meeting at the Windsor Office. (McVeigh Aff. ¶ 12, ECF No. 101-4.) The CEO explained most jobs at the Windsor Office would be transferred to the Ramsey Office within 6 to 18 months. (*Id.* ¶ 13.) According to the CEO, Windsor Office employees could continue working for Defendant at its Ramsey, Arizona, or Florida offices, and would be eligible for relocation benefits. (*Id.*; Cezus Dep. 32:18–23, ECF No. 101-1.) The CEO advised that affected employees who refused to accept a transfer would not receive severance benefits. (McVeigh Aff. ¶ 13; Cezus Dep. 46:1–47:22.) Defendant regularly emailed Windsor Office employees in the following months reiterating that employees who transferred from Windsor to Ramsey would keep their title, pay, and seniority and get a relocation bonus; but that employees who refused to transfer would not receive severance. (McVeigh Aff. ¶¶ 17–21.)

Between mid-2018 and October 2018, Defendant sent each soon-to-be-relocated employee a sixty-day notification letter, notifying the employee that their position would be transferred and setting a deadline for the employee to inform Defendant whether they would transfer with their position. (*Id.* ¶ 22.) By early October 2018, Defendant "determined that all departments and positions that were relocating to Ramsey would move by the end of 2018." (*Id.* ¶ 24.)

[2] Richard K. Taylor.

By the end of 2018, eighty-four employees transferred from the Windsor Office. (*See* Pl.'s Ex. L ("Affected Emp. List"), ECF No. 107-1.) Another large group of employees resigned before the final transfer. (*Id.*) Roughly 120 employees refused to transfer and kept working at the Windsor Office until the final transfer; they were terminated on December 14, 2018. (*Id.*) A handful of positions at the Windsor Office were not transferred. (McVeigh Aff. ¶ 35.) Some departments "were always expected to stay" at the Windsor Office. (*Id.*) Other positions were "duplicative of positions" at the Ramsey Office, and were eliminated. (*Id.*) Employees in duplicative positions were given severance. (*Id.*) In 2025, Defendant sold the Windsor Office at a loss. (DeSantis Aff. ¶ 45.)

***ii. The Severance Plan***

Defendant adopted a severance plan ("Plan") in 2015. (*See* McVeigh Ex. A ("Plan") § 1.3, ECF No. 101-4.) The Plan was a "welfare benefit plan," as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*Id.* § 1.2.) Under the Plan, an employee is eligible for severance if the employee is terminated due to an "Eligible Event." (*Id.* § 3.1.) A reduction in force ("RIF") is an "Eligible Event." (*Id.* § 2.5.) Within the Plan, a RIF means Defendant (a) has permanently eliminated one or more jobs and (b) has classified the termination as a RIF. (*Id.* § 2.15.) The Plan allowed Defendant to "determine, in its sole and absolute discretion, whether or not an employee has a Termination of Employment due to a [RIF]." (*Id.*) A RIF, however, does not include an employee's resignation, regardless of the reason. (*Id.*) Moreover, the Plan barred severance for any employee "who has refused an offer of employment in another division, department, office, or unit of the Company." (*Id.* § 3.1.01.)

### *iii. Plaintiff*

Plaintiff worked for Konica and, later, Defendant in the Windsor Office from 1985 to 2018. (Second Am. Compl. ("SAC") ¶¶ 28–30, ECF No. 25.) On October 15, 2018, Plaintiff received notice that his position was being moved to Ramsey. (Cezus Dep. at 73:9–23.) Plaintiff had one week to inform Defendant about whether he would transfer. (*Id.*) Plaintiff told Defendant he would not accept the transfer. (*Id.* at 75:3–25.) Thereafter, Plaintiff worked at the Windsor Office until he was terminated on December 14, 2018. (*See* McVeigh Aff. ¶ 34; Affected Emp. List.) Plaintiff sought severance benefits, which Defendant's Plan Administrator denied, as Plaintiff refused to transfer to the Ramsey Office. (SAC ¶¶ 72–73.) The Plan Administrator then denied Plaintiff's appeal. (*Id.* ¶ 85.)

## B. Procedural History

Plaintiff filed this putative class action lawsuit in New Jersey Superior Court on December 17, 2020. (*See* Compl., ECF No. 1-1.) Defendant timely removed to this Court. (*See* Notice of Removal, ECF No. 1.) Plaintiff amended the Complaint twice. (Am. Compl., ECF No. 14; SAC.)

The Second Amended Complaint alleges that Defendant used the relocation from Windsor to Ramsey as a guise to conduct a mass layoff without having to pay severance. (SAC ¶¶ 41–46.) Plaintiff argues that Defendant knew most Windsor employees, including Plaintiff, would not accept a transfer to a facility 123 miles away. (*Id.* ¶¶ 46, 50, 59.) Plaintiff claims Defendant kept the Windsor Office open, but never filled the relocation-induced vacancies, resulting in what is effectively a reduction in force. (*Id.* ¶ 54.) And, according to Plaintiff, had Defendant properly designated Plaintiff's position as "eliminated," he would have been eligible for severance. (*Id.* ¶ 60.) Plaintiff brought the Second Amended Complaint and now seeks to certify on behalf of the following class:

> All eligible participants in Konica Minolta Business Solutions, U.S.A, Inc.'s severance and/or retirement plan entitled Amended and Restated Konica Minolta Severance Plan adopted and effective January 1, 2015 ("The Plan" or "Severance Plan"), who, as employees of the Company, experienced Termination of Employment under the guise of relocating Plaintiff, and similarly situated employees, to new positions at a New Jersey facility of the Company, which Defendant knew would be near impossible for the proposed employee Class Members to accept, and as such, would suffer termination. As these employees were not intended to be replaced and their positions were planned to be eliminated and/or consolidated, these employees were eligible for, yet denied benefits under the Plan.

(*Id.* ¶ 95; Pl.'s Moving Br. at 9, ECF No. 100-1.)

Plaintiff moved for class certification on November 21, 2025. (*See* Mot. for Class Certif., ECF No. 100.) Plaintiff argues (1) his proposed class is numerous because it includes up to 400 Windsor Office employees; (2) this case raises at least one common question of fact or law because class-wide liability depends on interpreting the Plan and on whether Defendant disguised a RIF as a relocation; (3) his claims are typical of the class because he does not assert any claims for anything aside from severance benefits; (4) he is an adequate class representative because his interests do not conflict with those of class members, and his counsel will secure "the best possible recovery" for the class; and (5) the class is readily ascertainable based on data Plaintiff could obtain from the Plan's administrator through class discovery. (Pl.'s Moving Br. at 14–20, ECF No. 100-1.)

Plaintiff claims the Court may certify the class under Rules 23(b)(1), (b)(2), or (b)(3). Plaintiff states that certification is proper under Rule 23(b)(1) because the Plan Administrator has a duty to treat all class members alike, and separate lawsuits could force the Plan Administrator to treat plan members differently. (*Id.* at 20–22.) According to Plaintiff, certification under Rule 23(b)(2) would also be proper because Defendant has refused to act on grounds applicable to the entire class, such that injunctive relief would be appropriate. (*Id.* at 22.) Finally, Plaintiff alleges

that certification is appropriate under Rule 23(b)(3) because (a) common questions of law predominate over individual questions, as the same provisions of the Plan apply to all class members and all class members were subject to the relocation; and (b) a class action is superior to class members bringing individual lawsuits.

Defendant does not oppose Plaintiff's class certification motion based on numerosity or adequacy of Plaintiff's counsel. (*See* Def.'s Opp'n at 25 n.14, ECF No. 101.) Rather, Defendant argues that (1) Plaintiff's theory that the relocation was a RIF in disguise lacks support in the record; (2) this case does not present a common question of law or fact because the Plan's eligibility requirements for severance must be determined on an employee-by-employee basis, and the Plan gives Defendant sole discretion to determine whether an employee was terminated due to a RIF; (3) a common question does not predominate because "each class member must prove that his or her position was not transferred to Ramsey, but was in fact eliminated"; (4) plaintiff fails to show the class is "clearly defined" or "ascertainable"; (5) certification under Rule 23(b)(1) is inappropriate because the Plan Administrator must determine severance eligibility on an employee-by-employee basis; and (6) certification under Rule 23(b)(2) is unwarranted because the Second Amended Complaint does not seek injunctive relief. (*See generally id.*) Plaintiff replied. (*See* Pl.'s Reply, ECF No. 102.)

## II. LEGAL STANDARD

Rule 23 sets forth a two-pronged standard for class certification. To obtain certification, a plaintiff must demonstrate that the putative class meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories under which she wishes to proceed on behalf of a class. Fed. R. Civ. P. 23; *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

Under Rule 23(a), a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4). These four requirements are respectively referred to as "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 308–09 (3d Cir. 1998); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class is generally numerous "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Marcus*, 687 F.3d at 595. Under Rule 23(a)(2), the commonality requirement is satisfied where "there are questions of law or fact common to the class."[3] Plaintiffs also must show the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).[4] Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. *See Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (noting that adequacy "assures that the

[3] "Rule 23(a)(2)'s commonality requirement requires that the putative class members 'share at least one question of fact or law in common with each other.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 528 (3d Cir. 2004)). Commonality "does not require that all class members share identical claims, and indeed factual differences among the claims of the putative class members do not defeat certification," *In re AremisSoft Corp. Sec. Litig*., 210 F.R.D. 109, 120 (D.N.J. 2002) (internal citation and quotation omitted). "Since a single question of fact suffices to satisfy commonality," this requirement "is easily met." *Bing Li v. Aeterna Zentaris, Inc*., 324 F.R.D. 331, 339 (D.N.J. 2018).

[4] "The typicality requirement 'centers on whether the interests of the named plaintiffs align with the interests of the absent members.'" *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 75 (D.N.J. 2019) (quoting *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001)). "The standard for demonstrating typicality is undemanding and requires that 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant.'" *Id*. (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 183-84 (3d Cir. 2001). "Complete factual similarity is not required [to establish typicality]; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig*., 589 F.3d 585, 598 (3d Cir. 2009) (internal quotation omitted).

named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified."); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (observing that Rule 23(a)(4) "mainly seeks 'to uncover conflicts of interest between named parties and the class they seek to represent.'" (citation omitted)).

"If the Rule 23(a) criteria are satisfied, the court must also find that the class fits within one of the three categories of class actions defined in Rule 23(b)." *Prudential*, 148 F.3d at 309. Rule 23(b)(1) covers matters where separate actions by or against individual class members would create a risk of "incompatible standards of conduct for the party opposing the class," Fed. R. Civ. P. 23(b)(1)(A),[5] or would either "as a practical matter . . . be dispositive of the interests" of nonparty class members or "substantially impair or impede their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B).[6]

Rule 23(b)(2) "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem Prods.*, 521 U.S. at 614. "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Id.*

Rule 23(b)(3) applies when "'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit 'may nevertheless be convenient and desirable.'" *Id.* at 615 (citation omitted). Rule 23(b)(3) has two requirements: (1) "that the questions of law or fact common to class members predominate over

---

[5] Rule 23(b)(1)(A) applies "where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted).

[6] Rule 23(b)(1)(B) "includes, for example, 'limited fund' cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem Prods.*, 521 U.S. at 614 (citation omitted).

any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Third Circuit has also recognized an "implicit ascertainability requirement," *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), which the Court must consider "[p]rior to determining whether the requirements of Rule 23 have been met," *Carney v. Goldman*, No. 15-260, 2018 WL 2441766, at *10 (D.N.J. May 30, 2018). A class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (cleaned up). Ascertainability must be demonstrated under the same "rigorous" standards provided for by Rule 23, which requires a plaintiff to present "evidentiary support" that the proposed method of ascertaining a class will succeed. *Carrera v. Bayer Corp.*, 727 F.3d 300, 306–07 (3d Cir. 2013).

Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The plaintiff "must affirmatively demonstrate his [or her] compliance with the Rule—that is, he [or she] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* "[T]o certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 564 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "The same analytical principles govern Rule 23(b)." *Behrend*, 569 U.S. at 34. Frequently, the Court's "rigorous analysis" will "overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. Rule 23 "gives no license to

shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met." *Marcus*, 687 F.3d at 591. But Rule 23 does not empower a court "to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The decision to certify a class is left to the discretion of the court. *Hydrogen Peroxide*, 552 F.3d at 310.

## III. DISCUSSION

### A. The Class is Ascertainable

The Court must consider the "implicit ascertainability requirement," *Byrd*, 784 F.3d at 163, "[p]rior to determining whether the requirements of Rule 23 have been met." *Carney*, 2018 WL 2441766, at *10. Again, a class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163. "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593. "Some courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails." *Id.* (collecting cases).

Here, Plaintiff defines the proposed class as:

> All eligible participants in [the Plan], who, as employees of the Company, experienced Termination of Employment under the guise of relocating Plaintiff, and similarly situated employees, to new positions at a New Jersey facility of the Company, which Defendant knew would be near impossible for the proposed employee Class Members to accept, and as such, would suffer termination. As these employees were not intended to be replaced and their positions were planned to be eliminated and/or consolidated, these employees were eligible for, yet denied benefits under the Plan.

(Compl. ¶ 95.)

The Court finds that the proposed class is "currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 593. Courts must determine: (1) whether the defined class specifies "a particular group that was harmed during a particular time frame, in a particular location, in a particular way" and (2) whether it can "ascertain the class's membership in an objective manner." *Lutz Surgical Partners PLLC v. Aetna, Inc.*, No. 15-2595, 2023 WL 2153806 at *7 (D.N.J. Feb. 21, 2023) (cleaned up).

If a class is certified, the certification order or opinion "must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Hydrogen Peroxide*, 552 F.3d at 320–21 (quoting *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187 (3d Cir. 2006)); *see* Fed. R. Civ. P. 23(c)(1)(B). "Clearly delineating the contours of the class along with the issues, claims, and defenses to be given class treatment serves several important purposes, such as providing the parties with clarity and assisting class members in understanding their rights and making informed opt-out decisions." *Marcus*, 687 F.3d at 591–92 (citing *Wachtel*, 453 F.3d at 187).

Here, the proposed class includes every employee in the Windsor Office: (1) whose position was selected for transfer from the Windsor Office during the relocation effort; (2) who did not accept the transfer; (3) who was terminated after refusing the transfer; and (4) who was ineligible for severance benefits under the Plan as an employee "who has refused an offer of employment in another division, department, office, or unit of the Company." (Plan § 3.1.01.) The Court readily finds this class (1) can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class

members fall within the class definition." *Byrd*, 784 F.3d at 163. The proposed class members are capable of identification without extensive and individualized fact-finding or "mini-trials." *Marcus*, 687 F.3d at 591–92. Company databases could readily show whether individuals should be included in the proposed class. As such, the proposed class meets the "implicit ascertainability requirement."[7] *Id*. Accordingly, the Court proceeds to determine whether the requirements of Rule 23 have been met. *See Carney*, 2018 WL 2441766, at *10.

**B. The Class Satisfies Rule 23(a)**

***i. Numerosity***

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." No minimum number of plaintiffs "is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," the prong is met. *Stewart*, 275 F.3d at 226–27.

Plaintiff asserts that the putative members of the Class are so numerous that joinder of all members is impracticable. Plaintiff contends that the Class includes up to approximately 400 Windsor, Connecticut employees formerly employed by Defendant whose positions were affected by Defendant's improper denial of benefits and identified on KMBS' "Relocation/Termination list" but no less than 100. (Pl.'s Moving Br. at 14.) Because classes of more than forty members are numerous, the Court concludes Plaintiff satisfies Rule 23(a)(1). *See Mulder v. PCS Health Sys.*, 216 F.R.D. 307, 312 (D.N.J. 2003).

[7] Defendants argue briefly that Plaintiff has not met the ascertainability requirement because Plaintiff "offers only vague references to several different proposed class sizes." (Def.'s Opp'n at 37.) The Court disagrees. The question is whether a class (1) can be "defined with reference to objective criteria"; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163. As discussed above, this class meets both prongs.

### *ii. Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "[O]nly one question of law or fact in common is necessary to satisfy the commonality requirement . . . ." *Schering Plough*, 589 F.3d at 597 n.10. "The bar for establishing commonality is 'not high' and is 'easily met.'" *In re Insulin Pricing Litig.*, No. 17-699, 2024 WL 416500, at *19 (D.N.J. Feb. 5, 2024) (quoting *In re Pharmacy Benefit Managers Antitrust Litig.*, No. 03-4730, 2017 WL 275398, at *23 (E.D. Pa. Jan. 18, 2017)). "However, a bald assertion that all putative class members suffered a violation of the same law is generally insufficient to satisfy the commonality requirement." *Id.* What matters "is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Dukes*, 564 U.S. at 350).

Plaintiff claims this case presents common questions of liability and relief. First, Plaintiff argues that classwide liability requires interpreting and applying Plan provisions applicable to all members of the class, including whether Defendant used the relocation as a guise to conduct a RIF without having to pay putative class members severance benefits. (Pl.'s Moving Br. at 15–16.) Relatedly, Plaintiff asserts that Defendant's interpretation of what constitutes a RIF under the Plan is common to all class members. (*Id.* at 16.) Plaintiff also contends that the amount of relief will be based on benefits calculated in conformity with the proper interpretation of the Plan and ERISA. (*Id.* at 15.)

The Court agrees. A classwide proceeding can generate common answers to resolve this litigation, including (1) whether the relocation constituted a RIF under the Plan; (2) whether Defendant conducted a RIF under the guise of a relocation to avoid paying benefits under the Plan; and (3) whether class members "refused an offer of employment in another division, department, office, or unit of the Company." (Plan § 3.1.01.) "The 'glue' holding the class's ERISA claims together is, in other words, is the common reason why their statutory rights and plan benefits were allegedly denied." *Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121, 131 (D.N.J. 2013), *aff'd,* 647 F. App'x 76 (3d Cir. 2016); *see also Cockerill v. Corteva, Inc*., 345 F.R.D. 81, 106 (E.D. Pa. 2023) ("Because the claims center on how the Employers acted toward the classes as a whole, their disposition is common to all class members.") The Court, accordingly, finds that Plaintiff satisfies the commonality requirement.

***iii. Typicality***

Rule 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To evaluate typicality, courts ask whether the named plaintiffs' claims are "typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck*, 457 F.3d at 296 (quoting *Baby Neal*, 43 F.3d at 55). "The standard for demonstrating typicality is undemanding and requires that 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant.'" *Papa*, 333 F.R.D. at 75 (quoting *Newton*, 259 F.3d at 183–84). Typicality has three components:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Schering Plough*, 589 F.3d at 599.

Plaintiff's claims use the same legal theories and underlying facts as those of the class. Both Plaintiff's and the class's claims (1) interpret Plan provisions applicable to all members of the class; and (2) assert that Defendant used the relocation as a guise to conduct a RIF and avoid paying severance benefits under the Plan. Plaintiff's interests align with those of the class because Plaintiff seeks to enforce fiduciary duties and recover benefits owed to all class members under the Plan.

Plaintiff's interests do not appear to conflict those of the Class. Nor does it appear Defendant has a unique defense against Plaintiff that would interfere with Plaintiff's representation of the class. Accordingly, the Court concludes Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiff and members of the proposed Class have a similar interest in recovering any losses due to them under the Plan because of Defendant's conduct. Moreover, Plaintiff contends that he does not assert any claims relating to the Plan in addition to or different than those of the Class. (Pl.'s Moving Br. at 16–17.) The Court, therefore, concludes by a preponderance of evidence that Plaintiff's claims are typical of the claims of Class members.

***iv. Adequacy***

Under Rule 23(a)(4), a class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." Adequacy involves a two-pronged test: "first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second, the plaintiff's counsel must be qualified to represent the class." *Lutz*, 2023 WL 2153806, at *10. "Rule 23(a)'s adequacy of representation requirement serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Pet Food*

*Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (cleaned up).

As discussed in the Court's typicality analysis, Plaintiffs' interests are sufficiently aligned with any absent members of the proposed class. Although Defendants do not contest the adequacy of class counsel, the Court notes that proposed Class Counsel, the Clancy Law Firm and Green Savits, are experienced civil litigators, having more than fifty years combined legal experience in New York, New Jersey federal and state courts, have engaged in extensive investigation and discovery in this matter and have experience in complex litigation, class actions and/or ERISA matters. (*See* Clancy Decl., ECF No. 100-2; Kaplan-Khodorovsky Decl., ECF No. 100-4); *Guidry v. Wilmington Tr., N.A.*, 333 F.R.D. 324, 330 (D. Del. 2019) (granting class certification and finding that "[b]ased on the experience of counsel . . . Plaintiff's counsel will fairly and adequately represent the interests of the class.").

**C. The Class May be Certified Under Rule 23(b)(1)**

After satisfying the Rule 23(a) requirements, Plaintiffs must also show that the class is appropriate under Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590. The Court finds that certification is proper under Rule 23(b)(1).[8] Rule 23(b)(1) provides for certification if:

> [P]rosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Certification under Rule 23(b)(1)(A) is appropriate "in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of

[8] Because "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)," *Dukes*, 564 U.S. at 345, the Court need not address Plaintiffs' argument in the alternative for certification under Rule 23(b)(2) or (b)(3).

practical necessity." *Amchem Prods.*, 521 U.S. at 614. This case meets Rule 23(b)(1)(A)'s requirements because the Plan Administrator has a legal obligation to interpret the terms of the Plan consistently for all similarly situated participants.[9] Individual cases could produce different interpretations of the Plan and set incompatible standards of conduct for the Plan and its administrator, which favors a class wide certification. *See Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 20-6827, 2024 WL 2765004, at *8 (D.N.J. May 30, 2024) ("[M]ultiple actions alleging that Defendants breached their fiduciary duties could lead to inconsistent results and incompatible standards for Defendants' conduct moving forward."); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-1151, 2009 WL 331426, at *12 (D.N.J. Feb. 10, 2009) ("Pursuing separate actions would raise a substantial risk that different courts would reach inconsistent conclusions about the standards of conduct for the fiduciaries, and that different courts might order conflicting injunctive or other remedies."); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (finding Rule 23(b)(1)(A) satisfied "because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'") Thus, class certification is consistent with and satisfies Rule 23(b)(1)(A).

And, because the Plan Administrator must interpret the Plan consistently for similarly situated participants, resolving a case for one individual class member would, as a practical matter, resolve the case for all other class members. *See Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626, 639 (E.D. Pa. 2021), *aff'd,* 36 F.4th 124 (3d Cir. 2022) ("Allowing individual participants to pursue separate actions would result in outcomes likely to be dispositive of the interests of other

[9] Defendant argues that class members are not similarly situated because the Plan Administrator "would be obligated to consider the individual circumstances of other employees that might be different from Plaintiff's." (Def.'s Opp'n at 39.) Not so. Class members are similarly situated because Plaintiff's "claims are based on [Defendant's] conduct," i.e., that Defendant disguised a RIF as a relocation effort to deprive all class members of ERISA severance benefits. *Schering Plough*, 589 F.3d at 604. Plaintiff's claims do not, as Defendant argues, depend "on unique facts and individual relationships." *Id.*

Plan participants."). The Court, accordingly, finds certification is also appropriate under Rule 23(b)(1)(B).

**IV. <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's motion for class certification and appointment of class representatives and counsel under Rule 23 (ECF No. 100) is **GRANTED**. An appropriate Order accompanies this Opinion.



**DATED: 6/23/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JAMES CEZUS *and other similarly situated employees*,

Plaintiffs,

v.

KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.,

Defendant.

Civil Action No. 21-792 (JXN)(LDW)

**ORDER**

**NEALS**, District Judge

Before the Court is Plaintiff James Cezus's ("Plaintiff") motion for class certification under Federal Rule of Civil Procedure[1] 23. (ECF No. 100.) Defendant Konica Minolta Business Solutions, U.S.A., Inc. ("Defendant") opposed (ECF No. 101); and Plaintiff replied (ECF No. 102). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated in the accompanying Opinion,

**IT IS** on this **23rd** day of June 2026

**ORDERED** that:

1. Plaintiff's motion for class certification (ECF No. 100) is **GRANTED**;
2. The following class is hereby CERTIFIED:

> Every employee in Defendant's Windsor Office: (1) whose position was selected for transfer from the Windsor Office during the relocation effort; (2) who did not accept the transfer; (3) who was terminated after refusing the transfer; and (4) who was ineligible for severance benefits under the Plan as an employee "who has refused

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

an offer of employment in another division, department, office, or unit of the Company."

3. The parties shall, within thirty (30) days of this Order, identify any claims, issues, or defenses not subject to class treatment.[2]

**JULIEN XAVIER NEALS**
**United States District Judge**

[2] *See Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 184 (3d Cir. 2006) (stating that Rule 23 requires the certification order or opinion to include the "precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis.").