**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

No. 26-8035

---

JAMES CEZUS and other similarly situated employees,
Plaintiffs-Respondents,

v.

KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.,
Defendant-Petitioner.

---

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S PETITION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

---

From an Order Entered by the United States District Court
for the District of New Jersey
Civil Action No. 2:21-cv-0072-JXN-LDW
(Hon. Julien Xavier Neals, U.S.D.J.)

---

**THE CLANCY LAW FIRM**
Donna H. Clancy
40 Wall Street, Floor 25
New York, New York 10005
Telephone: (212) 747-1744

**GREEN SAVITS, LLC**
Sara E. Kaplan
(*Application for Admission Pending)*
25B Vreeland Road, Suite 108
Florham Park, NJ 07932
Telephone: (973) 695-7777

*Counsel for Plaintiffs-Respondents James Cezus and Other Similarly Situated Employees*

*On the Brief:*
Sara E. Kaplan
Donna H. Clancy

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................................ 1

STATEMENT OF THE CASE ........................................................................ 3

A. Konica Minolta Planned the Windsor Transition Expecting Most Employees Would Leave ........................................................................ 3

B. The Plan and the Denial of Severance ........................................................ 5

C. The District Court Certified a Defined Class ................................................ 6

COUNTER-STATEMENT OF QUESTIONS PRESENTED .................................. 7

RELIEF SOUGHT ........................................................................................ 7

REASONS FOR DENYING INTERLOCUTORY REVIEW .................................. 8

I. The Class Claims Are Appropriate for 23(b)(1) Certification ......................... 9

A. 23(b)(1)(A) ................................................................................ 10

II. The Class's Claim for Severance Benefits Does Not Defeat Rule 23(b)(1) Certification Under *Wal-Mart Stores, Inc. v. Dukes* ........................................ 14

III. The District Court Did Not Err in Finding Commonality ............................ 17

IV. The Size of the Class is Not a Ground for Appeal ...................................... 20

CONCLUSION ........................................................................................... 21

CERTIFICATE OF COMPLIANCE ................................................................ 23

CERTIFICATE OF SERVICE ........................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................ 10
*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ............................................ 18
*Boley v. Universal Health Servs., Inc.,* 36 F.4th 124 (3d Cir. 2022) ..................... 13
*Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019) ............................... 18

*In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172 (S.D.N.Y. 2006). .......10
*In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.,* 2009 WL 331426 (D.N.J. Feb. 10, 2009) ....................................................................................................10
*In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585 (3d Cir. 2009) ...............13
*Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 2024 WL 1765004 (D.N.J. May 30, 2024) ....................................................................................................10
*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154 (3d Cir. 2001), ....................................................................................................21
*Reinig v. RBS Citizens*, N.A., 912 F.3d 115 (3d Cir. 2018)......................................18
*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) .....................................8
*Schering-Plough*, 589 F.3d at 597 (3d Cir. 2009) ....................................................18
*Thomas v. SmithKline Beecham Corp.,* 201 F.R.D. 386 (E.D. Pa. 2001)......... 18, 20
*Trauernicht v. Genworth Fin., Inc.*, 169 F.4th 459 (4th Cir. 2026)............................15
*Wachtel ex rel. Jesse v. Guardian Life Insurance Co. of America*, 453 F.3d 179 (3d Cir. 2006). ....................................................................................................9
*Wal-Mart Stores, Inc. v.* Dukes, 564 U.S. 338 (2011).............................................14

**Other Authorities**

ERISA § 502(a)..........................................................................................................6

**Rules**

Fed. R. Civ. P. 23(f) .............................................................................. *passim*

Fed. R. Civ. P. 23(a)........................................................................... 7, 18, 20

Fed. R.Civ. P. 23(b) .............................................................................. *passim*

## INTRODUCTION

Defendant Konica Minolta Business Solutions U.S.A., Inc. ("Defendant") denied severance to Windsor employees whose positions it claimed were relocating to New Jersey, even though its own records support Plaintiff's claim that the transition eliminated positions. Before announcing the move to New Jersey, Defendant expected only approximately 25% of affected Windsor employees to relocate. Company records identified positions that would not be filled, and Plaintiff's expert found that the employment data was more consistent with a reduction in force than a relocation. Yet Defendant told employees who declined to move that they would be terminated without severance. This action challenges that denial of benefits under Defendant's Severance Plan ("the Plan").

Defendant opens its petition by assuming that the positions were relocated and that employees simply rejected continued employment. Those are the very grounds Plaintiff challenges. Whether the transition eliminated positions, and whether the alleged transfer offers justified denying severance, are common questions about Defendant's conduct and its interpretation of one plan. Defendant cannot defeat certification merely by repeating its position on the merits.

The District Court certified a defined class: employees whose positions were selected for transfer, who declined, were terminated, and were denied benefits under the Plan's refusal of transfer exclusion. Defendant points to different outcomes

among the broader Windsor workforce, but the court did not certify that entire workforce. It certified employees challenging the same grounds for denial. Additional eligibility questions may affect who ultimately recovers; they do not eliminate the common questions the court identified.

Nor did the District Court invent a new basis for certification. Rule 23(b)(1) addresses the risks that separate actions will impose incompatible standards or practically determine absent members' interests. Those risks arise here because the Administrator must interpret the Plan consistently for similarly situated employees. Defendant's insistence that class members seek money in different amounts does not overcome this Circuit's precedent permitting ERISA certification despite individual proof necessary for recovery.

Finally, increased stakes alone do not justify interlocutory review. The class seeks existing Plan benefits calculated from compensation and service. Certification does not establish liability and does not preclude merits defenses. Defendant has not shown that the resulting exposure would force settlement regardless of the merits. The petition presents no sufficient reason to interrupt this litigation and should therefore be denied.

## STATEMENT OF THE CASE

### A. Konica Minolta Planned the Windsor Transition Expecting Most Employees Would Leave

Plaintiff James Cezus ("Cezus") worked for Konica Minolta or its predecessor in Windsor, Connecticut, from 1985 until his termination in December 2018. (Dkt. 108 at 5; Dkt. 100-1 at 7) His claim arises from "Project W," Defendant's plan to move operations from Windsor to its Ramsey, New Jersey headquarters. (Dkt. 108 at 5; Dkt. 25, ¶¶ 41-46; Dkt. 100-1 at 4,5,7) The company represented that hundreds of Windsor positions would transfer to Ramsey, including in its application for tax credits under New Jersey's Grow NJ program. *Id.* at 7. (Dkt. 108 at 2; Dkt. 25, ¶¶ 42-46)

Konica Minolta's planning documents show that it expected few of the employees holding those positions to follow them. Before announcing the transition, the company projected that only approximately 25% of affected Windsor employees would relocate. (Dkt. 100-2, Ex. I). Ramsey was approximately 120 miles from Windsor. (Dkt. 25, ¶ 46) Konica Minolta thus planned the transition knowing that most affected employees would likely lose their Windsor jobs without continuing employment in Ramsey.

On November 15, 2017, CEO Rick Taylor announced to Windsor employees that most of their positions would move to Ramsey over a period of up to 18 months and that the Windsor facility would close at an unspecified future date. (Dkt. 108, at

3; Dkt. 100-1 at 7, n.15) Employees were told their positions would transfer, but the announcement did not specify when each position would move. (Dkt. 108 at 3; Dkt. 100-1 at 7, n.15) Konica Minolta also told employees they would not receive severance if they declined to relocate. (Dkt. 108 at 3; Dkt. 25, ¶ 113)

The subsequent evidence called the company's characterization of the transition into question. Konica Minolta's records identified Windsor positions that would not be filled. (Dkt. 100-2, Ex. O) Plaintiff's economic expert, Nedko Yordanov, Ph.D., analyzed employment data before and after the transition and concluded that the data were more consistent with a reduction in force than a workforce relocation. (Dkt. 100-2, Ex. J) The analysis found that employment declined after the purported relocation, including when positions were examined by job title and job code. (Dkt. 100-2, Ex. J)

Cezus declined to move to Ramsey and was terminated on December 14, 2018. (Dkt. 108 at 5; Dkt. 25, ¶¶ 29, 48, 79) He was among the Windsor employees who lost their employment after their positions were designated for transfer. (Dkt. 108 at 5; Dkt. 25, ¶¶ 42, 46-48) His claim presents the issue at the center of this case: whether Konica Minolta could treat those terminations as the consequence of employees' refusal to relocate, while denying the existence of a reduction in force under the Plan.

**B. The Plan and the Denial of Severance**

The Amended and Restated Konica Minolta Severance Plan provides separation benefits to employees who incur a "Termination of Employment" due to an "Eligible Event" and satisfy the Plan's other conditions. (Dkt. 100-2, Ex. C) A "Reduction in Force" is an Eligible Event. (Dkt. 100-2, Ex. C) The Plan defines a reduction in force as "[t]he elimination by the Company of one or more employment positions for an indefinite period of time which the Company classifies as a Reduction in Force for purposes of the Plan." (Dkt. 100-2, Ex. C)

Section 3.1.01 of the Plan further provides that separation pay "will not be provided to a terminated employee who has refused an offer of employment in another division, department, office, or unit of the Company." (Dkt. 100-2, Ex. C) Defendant relied on that exclusion in denying severance benefits to Cezus and other Windsor employees who declined to move to Ramsey. (Dkt. 25, ¶¶ 73, 113)

Defendant, as Plan Administrator, denied Cezus's claim and administrative appeal on two grounds: it treated his position as relocated rather than eliminated, and it treated his decision not to move as a refusal of an offer of employment under § 3.1.01. (Dkt. 108 at 5; Dkt. 25, ¶¶ 73, 85-86) Cezus challenges this determination. He alleges that Konica Minolta carried out a reduction in force under the guise of relocation and applied the Plan's provisions to deny benefits to employees whose Windsor positions were eliminated. (Dkt. 25, ¶¶ 59-60, 95, 97) He brought this

action alleging claims under ERISA §§ 502(a)(1)(B), 502(a)(3), and 510. (Dkt. 25, ¶¶ 104-123)

**C. The District Court Certified a Defined Class**

Cezus moved to certify a class under Rule 23(b)(1), or alternatively under Rule 23(b)(2) or (b)(3). (Dkt. 100) On June 23, 2026, the District Court found Rule 23(a) satisfied and certified the following class under Rule 23(b)(1)(A) and (B):

> Every employee in Defendant's Windsor Office: (1) whose position was selected for transfer from the Windsor Office during the relocation effort; (2) who did not accept the transfer; (3) who was terminated after refusing the transfer; and (4) who was ineligible for severance benefits under the Plan as an employee "who has refused an offer of employment in another division, department, office, or unit of the Company."

(Dkt. 109)

The class is limited to employees subjected to the same sequence: selection of their Windsor positions for transfer, refusal to relocate, termination, and denial of severance under § 3.1.01. (Dkt. 108 at 12) The District Court identified common questions concerning whether the relocation constituted a reduction in force under the Plan, whether Konica Minolta implemented a reduction in force under the guise of relocation, and whether class members "refused an offer of employment" within the meaning of § 3.1.01 of the Plan. (Dkt. 108 at 15)

The court certified the class under Rule 23(b)(1)(A) because separate actions could establish incompatible standards governing interpretation of the same Plan.

(Dkt. 108 at 17-18) It also certified under Rule 23(b)(1)(B) because adjudication of one class member's claim could, as a practical matter, affect the others where the Administrator must interpret the Plan consistently. (Dkt. 108 at 18-19) Konica Minolta filed a petition for permission to appeal under Rule 23(f).

## COUNTER-STATEMENT OF QUESTIONS PRESENTED

1. Whether the District Court properly certified the class under Rule 23(b)(1)(A) and (B), where class members challenge common grounds for denying severance under one ERISA Plan, the Administrator must interpret that Plan consistently, and separate adjudications would risk incompatible standards of conduct and practical impairment of absent members' interests.

2. Whether the District Court properly found commonality under Rule 23(a)(2), where class members' claims present common questions concerning whether the Windsor Transition constituted a reduction in force under the Plan and whether declining transfer justified denial of benefits under the Plan's refusal-of-employment exclusion, notwithstanding additional questions that may affect individual recovery.

## RELIEF SOUGHT

Plaintiff respectfully requests that this Court deny Defendant's petition for permission to appeal under Fed. R. Civ. P. 23(f).

## REASONS FOR DENYING INTERLOCUTORY REVIEW

Review of a class certification order under Rule 23(f) is discretionary, not available as of right. Fed. R. Civ. P. 23(f). While this Court is afforded discretion in deciding on a 23(f) petition, "review is discouraged when the natural course of litigation will provide the moving party with an adequate remedy, or when the certification decision was routine and easily resolved." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 377 (3d Cir. 2013). Defendant seeks review on three grounds: that the District Court erred; that the Order presents a novel application of Rule 23(b)(1); and that certification "dramatically increases the litigation stakes." Pet. at 2, 7. Those are among the considerations this Court has identified in determining whether to grant interlocutory review. *Id.* at 376-77.

None of these conditions are present in this case. The District Court applied this Court's Rule 23(b)(1) cases to a defined ERISA class. Separate actions would subject Defendant to incompatible interpretations of one Severance Plan, and a judgment in one member's case would, as a practical matter, control the others. Defendant treats that application as both legal error and novelty. It is neither. The authorities on which Defendant relies do not unsettle this Court's law and do not show that the District Court abused its discretion. Further, increased stakes attend most certification orders. They do not, standing alone, justify interlocutory review. As a result, Defendant's petition should be denied.

Defendant's objection to the Class Certification Order's specificity likewise does not warrant interlocutory review. Pet. at 9–10. The District Court granted certification and directed the parties to identify claims or defenses not subject to class treatment, while its Opinion identified the central issues for collective adjudication. Op. at 15. To the extent a more explicit enumeration is required, the District Court can supply it through a supplemental order. *See Wachtel ex rel. Jesse v. Guardian Life Insurance Co. of America*, 453 F.3d 179, 189 (3d Cir. 2006).

## I. The Class Claims Are Appropriate for 23(b)(1) Certification

Rule 23(b)(1) provides that class certification is appropriate if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Rule 23(b)(1) governs this case. The certified class challenges one interpretation of one ERISA Severance Plan, applied to Windsor employees who were terminated after refusing transfer and denied benefits under the refusal of transfer exclusion. Defendant is obliged to apply that Plan consistently. It cannot interpret the Plan one way in this action and another way in the next. Separate lawsuits would therefore

create the risks Rule 23(b)(1) is designed to avoid: incompatible standards of conduct for the party charged with administering the Plan, and individual adjudications that would, as a practical matter, dispose of the interests of the remaining class members.

**A. 23(b)(1)(A)**

Certification under Rule 23(b)(1)(A) is appropriate where there is risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." The Supreme Court has noted that Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

As the ERISA Plan administrator, Defendant had an obligation to treat similarly situated class members the same. *See Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 2024 WL 1765004, at *8 (D.N.J. May 30, 2024); *In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.,* 2009 WL 331426, at *12 (D.N.J. Feb. 10, 2009); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006).

Here, separate actions by members of the certified class would create precisely the risk Rule 23(b)(1)(A) addresses. The class consists of Windsor employees whose positions were selected for transfer, who refused that transfer, who were then terminated, and who were *therefore* denied benefits under the Plan. (Op. at 12) The

common dispute is Defendant's construction of the Plan as applied to that group only. One court cannot hold that construction lawful while another holds it unlawful.

Defendant does not dispute the applicable standard. Instead, it argues that different results on different facts are "the norm," and that a duty of consistent interpretation is therefore not enough. (Pet. at 18–19) As an initial matter, some of Defendant's purported "eligibility conditions" are already resolved by the class definition: the class includes employees who were terminated after refusing transfer, rendering its distinction between termination and voluntary resignation or termination due to "any other cause" beside the point. (Op. at 12)

Other "eligibility conditions" are circular arguments. First, whether Defendant classified the terminations as a reduction in force is not an independent, member-specific obstacle to certification: Plaintiff challenges Defendant's decision to characterize the Windsor transition as relocation rather than a reduction in force under the Plan. Invoking that disputed classification as an eligibility defense assumes the correctness of the very determination the class seeks to challenge. Nor does the release requirement establish an individualized obstacle to certification. To the extent employees were not offered releases because Defendant deemed them ineligible for severance, the absence of an executed release is a consequence of the challenged denial.

The remaining conditions—satisfactory performance through the designated last day and return of company property—may bear on an individual member's ultimate entitlement to payment. They do not resolve whether Defendant properly characterized the Windsor transition as relocation rather than a reduction in force, or whether refusal of transfer barred severance under the Plan. Those common questions remain the same regardless of whether a particular employee satisfied these additional conditions. *See Amchem*, 521 U.S. at 614; *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006).

As a result, the District Court properly certified the class under Rule 23(b)(1)(A).

**<u>23(b)(1)(B)</u>**

Rule 23(b)(1)(B) permits certification when separate actions would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

The certified class turns on a common construction of the Plan: whether the Windsor terminations were a reduction in force and whether the refusal of transfer exclusion bars benefits for the class. A judgment answering those questions in one member's case would, as a practical matter, control the others. The Plan cannot mean

one thing for Plaintiff and another thing for the remaining class members who were terminated for the same reason. This Court has held that ERISA claims presenting that risk belong under Rule 23(b)(1)(B), and that individual issues going to particular members' ability to recover do not defeat that showing. *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 136-137 (3d Cir. 2022); *In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 604 (3d Cir. 2009).

Defendant argues that Rule 23(b)(1)(B) certification was improper because of varied employment outcomes among the approximately 400 employees whose jobs were planned for transfer as part of "Project W." However, the class that the District Court certified was much smaller than 400 employees, and the circumstances of the included employees are much narrower. Every class member's position was selected for transfer; every member declined, was terminated, and was denied benefits under § 3.1.01. (Op. at 12) Employees who accepted transfers, remained employed in Windsor, or received severance for eliminated positions fall outside the class. Their differing employment outcomes do not establish differences among the certified class members.

Whether the Administrator properly characterized the transition under the Plan or properly applied the refusal of transfer exclusion presents a challenge to the standards applied to the entire class. Because the Defendant must interpret the Plan consistently for similarly situated participants, resolution of those questions in

Plaintiff's individual action would govern its treatment of the same grounds for denial in the remaining class members' claims. An adverse determination would therefore do more than supply persuasive precedent: it would sustain the common basis for denying their benefits and substantially impair their ability to obtain relief from Defendant. Conversely, a favorable determination would remove that common barrier, even if additional eligibility questions remained.

Therefore, the District Court properly certified the class under Rule 23(b)(1)(B).

## II. The Class's Claim for Severance Benefits Does Not Defeat Rule 23(b)(1) Certification Under *Wal-Mart Stores, Inc. v. Dukes*

Defendant reads *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), as establishing a categorical rule that claims seeking monetary relief must proceed under Rule 23(b)(3). But *Dukes* addressed certification under Rule 23(b)(2), holding that individualized Title VII backpay claims could not be certified under that provision. *Dukes*, 564 U.S. at 360–61. This Court has since affirmed Rule 23(b)(1) certification of an ERISA class and expressly held that such certification "is not dependent on the degree of individual proof that will be required for individual plaintiffs to recover." *Boley,* 36 F.4th at 136-137.

*Dukes* involved individualized Title VII backpay claims that required a separate determination of each employee's claim and entitlement to money, and the employer's individual defenses. The Supreme Court ruled:

> The key to the (b)(2) class is the "indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them" Nagareda, 84 N.Y.U.L.Rev., at 132. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the Defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. *Id.* at 360-61

By contrast, the class in this case seeks a common determination that class members are eligible for the same Plan benefits for the same reasons. The common questions can be resolved classwide even if individual eligibility conditions remain to be addressed. If the class prevails, each member's recovery is calculated from the same Plan formula. This is not the individualized monetary relief *Dukes* required to proceed under Rule 23(b)(3).

Defendant's reliance *on Trauernicht v. Genworth Fin., Inc.*, 169 F.4th 459 (4th Cir. 2026) from outside this Circuit is similarly misplaced. *Trauernicht* reversed certification of a Rule 23(b)(1) class asserting ERISA breach of fiduciary duty claims involving a defined contribution retirement plan. *Id.* at 469. The Fourth Circuit ruled that those claims sought individualized monetary relief because each participant's

alleged injury depended upon the participant's own individual retirement account, whether the participant suffered any loss at all, and the participant's specific fund investment choices. *Id.* at 468-69.

The class in this case does not challenge the management of individual retirement accounts. Rather, the class seeks a common determination of eligibility for one plan benefit, paid under one formula, after the same question of Plan interpretation is answered. The Plan Administrator cannot interpret that Plan one way for one class member and another way for the next.

Moreover, this Court's decision in *Boley* contradicts the *Trauernicht* decision. Like *Trauernicht*, *Boley* involved a defined contribution retirement plan and ERISA breach of fiduciary duty claims concerning expensive and underperforming investments and excessive administrative fees. *Boley,* 36 F.4th at 129. Initially discussing standing, the Court ruled:

> Universal asks us to reach the opposite conclusion, contending the Named Plaintiffs' allegations are really thirty-seven separate claims challenging thirty-seven separate investment options included in the Plan... But the Named Plaintiffs do not allege thirty-seven individual breaches of fiduciary duty, but rather several broader failures by Universal affecting multiple funds in the same way. The District Court's conclusion that the Named Plaintiffs "do not pursue such piecemeal claims," 498 F. Supp. 3d at 724, addressed the substance of the Named Plaintiffs' allegations. The decision to offer the suite of Fidelity Freedom Funds was, in effect, one decision that led to thirteen allegedly imprudent funds being included in the Plan; the alleged failure to continuously evaluate management fees affected all funds in the Plan in the same way; and the alleged failure to monitor appointees resulted in high fees across the Plan menu. To establish standing, class

> representatives need only show a constitutionally adequate injury flowing from those decisions or failures. The Named Plaintiffs allege such an injury for each claim.

*Id.* at 132.

This standing analysis was not the end of the decision. This Court then affirmed Rule 23(b)(1) certification, holding that "certification of an ERISA class as a (b)(1) class is not dependent on the degree of individual proof that will be required for individual plaintiffs to recover." *Id.* at 137. Individual limits on who recovers or differences in recovery among class members did not defeat Rule 23(b)(1) certification.

Here, Defendant treats each class member's claim as a separate, individualized request for money. That is not the case here. The class challenges one course of conduct under one Severance Plan: the decision to treat the Windsor relocation as something other than an Eligible Event and to deny benefits under a single exclusion. Through this course of conduct, the administrator applied one construction to the entire certified class. Class members need not relitigate that Plan interpretation person by person any more than the *Boley* plaintiffs had to relitigate each fund as a separate fiduciary breach. Moreover, differences in salary or tenure are arithmetic, not separate theories of liability or separate claims for damages. As a result, this class was appropriately certified under Rule 23(b)(1).

## III. The District Court Did Not Err in Finding Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Class members need share only one such question. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *Schering-Plough*, 589 F.3d at 597 n.10 (3d Cir. 2009). What matters is whether a classwide proceeding can generate a common answer apt to drive the litigation. *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019). Factual differences among class members do not defeat that showing. *Reinig v. RBS Citizens*, N.A., 912 F.3d 115, 127 (3d Cir. 2018).

The District Court identified three common questions: whether the relocation was a reduction in force under the Plan; whether Defendant implemented a reduction in force under the guise of a relocation; and whether class members "refused an offer of employment" within the meaning of § 3.1.01. Op. at 15. Each question turns on Defendant's course of conduct and on the meaning of the same Plan terms. Claims that "center on how the [employer] acted toward the class[] as a whole" present common questions. *Cockerill v. Corteva, Inc.*, 345 F.R.D. 81, 106 (E.D. Pa. 2023). So do claims that turn on "the administrators' interpretation" of a plan term "and whether that interpretation violates ERISA." *Thomas v. SmithKline Beecham Corp.,* 201 F.R.D. 386, 393 (E.D. Pa. 2001).

Defendant's contrary argument is its Rule 23(b)(1) argument restated. Defendant argues that a reduction in force determination is "specific to each role,[1]" that a disguised-RIF finding would not establish any particular employee's entitlement, and that some Windsor jobs were filled by transferees, some by new hires, and a few paid as duplicative eliminations. (Pet. at 20–22) Those points go to who ultimately recovers. They do not eliminate the common questions presented by the class as certified.

The certified class consists of employees whose positions were selected for transfer, who declined, were terminated, and were denied severance under § 3.1.01. (Dkt. 109) Their claims present the same dispute: whether Defendant could characterize the Windsor Transition as a relocation rather than a reduction in force and treat their decisions not to transfer as refusals of an "offer of employment" under

[1] Defendant's assertion that a reduction-in-force determination is necessarily "specific to each role" finds no support in the Plan's text. The definition covers the elimination of "one or more positions," so a single reduction in force may affect multiple positions. Whether a particular employee's position was part of that reduction is a separate question; it does not require the Court to decide anew for each employee whether the reduction occurred.

the Plan. Those questions can be answered for the class as a whole. Differences in whether particular positions were later filled do not change the meaning of the Plan's terms or eliminate the common challenge to Defendant's grounds for denying benefits.

Whether Defendant's construction is lawful is a common question of Plan interpretation. Commonality is satisfied where the class presents "common questions of law with regard to the administrators' interpretation" of a plan term "and whether that interpretation violates ERISA." *Thomas*, 201 F.R.D. at 393 (E.D. Pa. 2001). The meaning of reduction in force and refusal of a transfer offer does not change from employee to employee. Defendant cannot give those provisions one meaning for Plaintiff and another for another class member.

Rule 23(a)(2) does not require that every condition of entitlement be answerable in the same way for every member. Individual issues going to recovery do not negate a common question that will advance the class claims. Treating those issues as if they must predominate is a Rule 23(b)(3) argument. This class was certified under Rule 23(b)(1), which contains no predominance requirement. *Schering-Plough*, 589 F.3d at 603–04; *Boley*, 36 F.4th at 136–37 (3d Cir. 2022). The District Court correctly concluded that Rule 23(a)(2) was satisfied.

## IV. The Size of the Class is Not a Ground for Appeal

Defendant's assertion that certification increases the litigation stakes does not establish inordinate settlement pressure. The class seeks benefits under an existing Severance Plan, with recovery determined by the Plan's formula based on compensation and years of service. Aggregating those claims increases the amount at issue, but does not expand Defendant's substantive obligations or establish its liability. Defendant remains free to contest the alleged reduction in force, the application of § 3.1.01, and any remaining eligibility conditions.

Without a showing that the resulting exposure would place "inordinate or hydraulic pressure" on Defendant to settle in the face of "potentially ruinous liability," *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 164–65 (3d Cir. 2001), Defendant's argument identifies the ordinary consequence of aggregating claims, not a reason for interlocutory review.

## **CONCLUSION**

For these reasons, the Court should deny Defendant's Petition under Rule 23(f) and uphold the Order certifying a class.

s/ *Donna H. Clancy*
Donna H. Clancy
**The Clancy Law Firm, P.C.**
40 Wall Street, Floor 25
New York, New York 10005
Telephone: (212) 747-1744

*Counsel for Plaintiff-Respondent James Cezus*

*s/Sara E. Kaplan*
Sara E. Kaplan
*(Application for Admission Pending)*
**Green Savits, LLC**
25B Vreeland Road, Suite 108
Florham Park, NJ 07932
Telephone: (973) 695-7777

Dated: October 2, 2026

# CERTIFICATE OF COMPLIANCE

1. At least one of the attorneys whose names appear on this Opposition is a member in good standing of the bar of this Court.

2. This Opposition complies with the type volume limitation for Federal Rule of Appellate Procedure 5(c)(1) in that it contains 4,724 words, excluding the parts of the Opposition exempted by Federal Rule of Appellate Procedure 32(f). The word limit for this Opposition is 5,200 words.

3. This Opposition has been prepared in Microsoft Word 14-point Times New Roman font, which is a proportionally spaced typeface. As such, the Opposition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6).

4. This Opposition complies with Third Circuit Local Appellate Rule 31.1(c) because the text of the Opposition electronically filed with the Court is identical to that of the paper copies.

5. I certify that pursuant to Third Circuit Local Appellate Rule 31.1(c), the electronic PDF Opposition has been prepared on a computer that is automatically protected with a virus detection program, namely a continuously updated version of OpenText, version 9.0.45.66, and no virus was detected.

s/ *Donna H. Clancy*
Donna H. Clancy
**The Clancy Law Firm, P.C.**
40 Wall Street, Floor 25
New York, New York 10005
Telephone: (212) 747-1744

*Counsel for Plaintiff-Respondent James Cezus*

Dated: October 2, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, I electronically filed the foregoing Opposition with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered for electronic filing.

Further, on October 2, 2026, the foregoing Opposition was sent to all counsel of record via electronic mail.

s/ *Donna H. Clancy*
Donna H. Clancy